F I L E D
United States Court of Appeals
Tenth Circuit

MAY 3 2005

PATRICK FISHER
Clerk

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JEFFERY PORTER, also known as
Jeff Borter, also known as Jeff
Fitzgerald Porter, also known as
Damien,

Defendant-Appellant.

No. 04-4009

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. NO. 2:01-CR-584-TS)**

---

Vicki Mandell-King, Assistant Federal Public Defender (Raymond P. Moore,
Federal Public Defender, with her on the briefs) Office of the Federal Public
Defender, District of Colorado and Wyoming, Denver, Colorado, for Defendant-
Appellant.

Michael S. Lee, Assistant United States Attorney (Paul M. Warner, United States
Attorney, with him on the briefs, and Wayne T. Dance, Assistant United States
Attorney, with him on the supplemental brief) Office of the United States
Attorney, District of Utah, Salt Lake City, Utah for Plaintiff-Appellee.

---

Before **KELLY** , **ANDERSON** , and **TYMKOVICH** , Circuit Judges.

---

**TYMKOVICH** , Circuit Judge.

Defendant-Appellant Jeffery Porter pled guilty in the United States District Court for the District of Utah to two criminal charges: one count of possession with intent to distribute five grams or more of actual methamphetamine, 21 U.S.C. § 841(a)(1), and one count of felon in possession of ammunition, 18 U.S.C. § 922(g)(1). Porter's plea agreement limited his right to appeal his sentence. Prior to sentencing, but after execution and approval of the plea agreement, Porter filed a motion to substitute counsel because of an alleged breakdown in communications between himself and his court appointed attorney. A magistrate judge denied Porter's motion. Subsequently, the district court sentenced Porter to 110-months imprisonment.

On appeal, Porter alleges the district court erred in denying his motion to substitute counsel. He also argues he is entitled to resentencing under *United States v. Booker*, 125 S. Ct. 738 (2005). The government contends Porter is precluded from raising either of these issues on appeal because he waived his appellate rights. Exercising jurisdiction under 28 U.S.C. § 1291, *see United States v. Hahn*, 359 F.3d 1315, 1320–24 (10th Cir. 2004) (en banc), we AFFIRM the district court's denial of the motion to substitute counsel and grant the government's motion to enforce the plea agreement as to Porter's sentence.

**Background**

In 2001, government authorities executed a search warrant on Porter's Murray, Utah apartment. They uncovered approximately 76 grams (30.2 grams pure) of methamphetamine and some handgun ammunition in a bathroom. The government then filed drug and ammunition charges against Porter, a previously convicted felon.

In December 2002, Porter pled guilty to the charged crimes. The plea agreement, signed by Porter, his attorney and an Assistant United States Attorney, admitted as true the relevant facts underlying the charged crimes. The agreement also limited Porter's ability to appeal his sentence:

> I knowingly and voluntarily waive my right to appeal any sentence imposed upon me, and the manner in which the sentence was determined, on any grounds in 18 U.S.C. § 3742, except that I do not waive my right to appeal (1) <u>a sentence above the maximum statutory penalty provided in the statute of conviction</u>, and (2) an upward departure from the final sentencing guideline range determined by the Court.
>
> I also knowingly and voluntarily waive my right to challenge my sentence, and the manner in which the sentence was determined, in any collateral review motion, writ or other procedure, including but not limited to a motion brought under 28 U.S.C. § 2255.

(emphasis added).

The district court held a hearing to accept the plea agreement in December 2002. After discussing its terms with Porter, the district court approved the plea, finding it had a factual basis and was entered into voluntarily by Porter with full knowledge of his legal rights and the consequences of the plea. The court also

specifically examined Porter about the appeal waiver, which Porter said he understood.

A few months later at the scheduled sentencing hearing, however, Porter's attorney, Michael Jaenish, told the court that Porter wished to withdraw his guilty plea and to have new counsel appointed. The district court postponed sentencing, and advised Porter to return for sentencing or for consideration of a motion to withdraw the guilty plea after a magistrate judge ruled on the substitute counsel matter.[1]

A magistrate judge subsequently conducted a hearing and denied Porter's motion for substitute counsel, finding no failure of representation by Jaenish. A month later Jaenish filed an affidavit with the district court stating Porter sought to withdraw his guilty plea based on ineffective assistance of counsel. Jaenish, however, concluded there was no legal basis for withdrawal of the plea, and that under the circumstances, he should no longer represent Porter. In the meantime, Porter sent a letter to the court asking for a court-ordered psychiatric evaluation of his mental competency (even though the court had previously found Porter to be competent at the hearing on the entry of plea). The court agreed and ordered

---

[1] The district court had previously assigned three different attorneys to represent Porter. Jaenish, the last of these, was appointed in May 2002. A magistrate judge denied Jaenish's initial request to withdraw as Porter's counsel in July 2002.

an evaluation as part of the presentence investigation. The subsequent evaluation concluded Porter did not suffer from a mental condition that precluded him from understanding the nature of the charges against him or participating in his defense.

In December 2003, the district court conducted a competency hearing to review the psychiatric evaluation. As a part of those proceedings, the court questioned whether the magistrate judge had ruled on Porter's motions to substitute counsel and to withdraw his guilty plea. Jaenish misinformed the court that the magistrate judge had denied both motions. In fact, as discussed above, only the motion for substitute counsel had actually been filed with and ruled on by the magistrate judge. Jaenish never filed a motion to withdraw the plea after submitting his affidavit to the court.

At any rate, at the competency hearing the court once again offered Porter the opportunity to file a motion to substitute counsel. In response, Porter expressed his frustration with what he perceived to be Jaenish's failure to keep him informed, but stated, "it [doesn't] matter to me. It really doesn't matter to me anymore." The district court then informed Porter: "Well, again, if you wish to take it to the magistrate, you can do so." Porter filed no further motions.

In January 2004, the district court held a final hearing to sentence Porter. Porter, still represented by Jaenish, engaged in a colloquy with the court

concerning the facts supporting a sentence reduction for acceptance of responsibility. Thereafter, when asked by the court whether he had any additional comments, Porter responded:

> I do understand this has been going on for a long time. And it wasn't my intent to have it go this long. And I tried to get Mr. Jaenish to understand that – you know, I was just trying to get him to understand that it's frustrating for me to sit and not being able to talk to him or him not answering my letters or anything like that. . . . So that is the only thing that was a big problem with us coming back and forth to court and with me and my attorney. So that is the only thing that would cause any kind of problems and, you know, I'm sorry about that. That was my only problem behind this matter. So that's all I would like to say.

Porter made no suggestion that he wished to withdraw his guilty plea or again seek new counsel. The court sentenced him to 110-months imprisonment.

## Discussion

This case requires us to answer two questions. First, whether the district court abused its discretion in denying Porter's motion to substitute counsel. Second, whether Porter is precluded from challenging his sentence by virtue of the plea agreement. We find no abuse of discretion and conclude the plea agreement precludes Porter's appeal of the sentence.

### I. Motion to substitute counsel

We review a district court's denial of substitute counsel for abuse of discretion. *See United States v. Vargas*, 316 F.3d 1163, 1165 (10th Cir. 2003).

"To warrant a substitution of counsel, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." *United States v. Padilla*, 819 F.2d 952, 955 (10th Cir. 1987) (citation and internal quotation marks omitted). "Good cause for substitution of counsel consists of more than a mere strategic disagreement between a defendant and his attorney . . . rather there must be a total breakdown in communications." *United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002) (citations omitted). "[T]o prove a total breakdown in communication, a defendant must put forth evidence of a severe and pervasive conflict with his attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible." *Id.*

Our cases instruct us in making this assessment to look at whether (1) the defendant's request was timely; (2) the trial court adequately inquired into defendant's reasons for making the request; (3) the defendant-attorney conflict was so great that it led to a total lack of communications precluding an adequate defense; and (4) the defendant substantially and unreasonably contributed to the communication breakdown. *See Romero v. Furlong*, 215 F.3d 1107, 1113 (10th Cir. 2000).

### A. Waiver of non-jurisdictional defenses

As a threshold matter, we dispose of the government's argument that entry of a voluntary and unconditional guilty plea waives the right to assert all non-jurisdictional defenses on appeal, *see, e.g.*, *United States v. Salazar*, 323 F.3d 852, 856 (10th Cir. 2003), including the denial of a motion for substitute counsel. While that is ordinarily true, it does not apply in these circumstances.

Here, Porter's request for new counsel arose *after* entry of the guilty plea and was based on Porter's dissatisfaction with his attorney's performance in preparation for sentencing. Since the circumstances forming the factual basis for the substitution motion followed execution of the plea agreement, it can hardly be precluded by it. *See United States v. Reyes-Platero*, 224 F.3d 1112, 1115–16 (9th Cir. 2000) (finding claim regarding post-plea conduct not barred by plea agreement). In short, Porter's motion to substitute counsel was not raised until after his guilty plea because the alleged breakdown in communications did not, in fact, occur until after the plea had been entered. Therefore, his appeal of the denial of that motion is not barred by virtue of the plea.

### B. Abuse of discretion

Turning now to the merits of the motion to substitute counsel, Porter argues the district court abused its discretion in denying his motion for two reasons. First, he contends Jaenish's lack of attention during the sentencing process evidenced a total breakdown of communication. In a hearing on the

motion, the magistrate judge found otherwise, and we agree. It is clear from the case transcripts that Porter felt frustrated at the perceived lack of time and attention that Jaenish dedicated to the case. Jaenish, however, testified at the hearing that he spent "quite a bit of time with Mr. Porter," including at least "an hour and a half" reviewing the presentence report before the aborted sentencing hearing. Jaenish also testified that he felt Porter's frustration stemmed from an inability to fully comprehend the sentencing factors on which the court's determination of sentence would be made.

Based on our independent review of the record, we are convinced that Porter is not entitled to relief. Simply put, there is no reason to believe "he had such minimal contact with the attorney that meaningful communication was not possible," *Lott*, 310 F.3d at 1249, or that Jaenish was not able to provide an "adequate defense" to Porter throughout the post-plea proceedings. *Romero*, 215 F.3d at 1113. In fact, the district court specifically found at a later proceeding that Jaenish had "pursued representation of [Porter] properly and aggressively from the beginning of his appointment."

Porter's second argument is waived. He claims on appeal for the first time that the district court abused its discretion by failing to adequately inquire into a conflict of interest or irreconcilable conflict between Porter and Jaenish. Porter's theory is that after Jaenish filed the affidavit in May 2003 stating that he should

no longer represent Porter, Jaenish had effectively compromised his ability to be a zealous advocate. Our review of the record shows, however, this issue was not presented to the district court.

Not that Porter did not have the opportunity. At the December 2003 competency hearing, the district court told Porter he could again ask the magistrate judge to remove Jaenish as counsel. Porter never did so. Further, at sentencing Porter had the opportunity to seek Jaenish's removal based on the affidavit. He declined to pursue a motion and, in fact, did not suggest dissatisfaction with the sentence he received. Consequently, neither the district court nor the magistrate judge ever considered whether events after the April 2003 hearing warranted substitution of counsel. We do not consider issues not presented to the district court, and they are deemed waived. *See Smith v. Secretary of N.M. Dep't of Corr.*, 50 F.3d 801, 814 n.22 (10th Cir. 1995); *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 720–22 (10th Cir. 1993).

In sum, Porter has not shown the lower court abused its discretion in failing to appoint substitute counsel to his case.

*II. Validity of the plea agreement*

The next issue is whether Porter's plea agreement precludes him from appealing his sentence. We find that it does.

-10-

We apply well-established contract principles and our three-part test recently developed in *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004) (en banc), to interpret appeal waivers. Under *Hahn*, we consider "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *Id.* at 1325 (citation omitted). We strictly construe the scope of appellate waivers and "any ambiguities in these agreements are read against the Government and in favor of a defendant's appellate rights." *Id.* (quotation marks and citations omitted).

### A. Scope of the appeal waiver

As a preliminary matter, it is helpful to clarify Porter's argument on appeal regarding the scope of the appeal waiver. He initially argued his sentence should be reversed in light of *Blakely v. Washington*, 124 S. Ct. 2531 (2004), because the sentence was based on a quantity of drugs neither admitted by him nor determined by a jury. Under this theory, Porter interpreted the exception to his appellate waiver allowing him to appeal a sentence "above the maximum statutory penalty provided in the statute of conviction," as referring to the maximum penalty the court could have imposed under the applicable Federal Sentencing Guideline (Guidelines) sentencing range based on facts he admitted. Porter claimed his

sentence exceeded this maximum because the court determined the sentence based on facts he did not admit. In subsequent briefing, however, Porter concedes that he *did* in fact stipulate to the quantity of drugs for which the court sentenced him. *See* Aplt. Supp. Reply Br. at 3 ("As the [plea agreement] reflects, Mr. Porter did in fact admit possession with intent to distribute the 30.2 grams of methamphetamine (pure).").[2]

With these considerations in mind, we reject Porter's argument that his sentence is outside the scope of the appellate waiver for two basic reasons. First, setting aside Porter's concession regarding drug quantity, his interpretation of the waiver clause contradicts the plain language of the plea agreement. The agreement contains a waiver exception where the sentence imposed exceeds the maximum provided in the "statute of conviction." Adopting Porter's approach would require us to read the term "statute of conviction" out of the agreement and substitute it with "applicable Guideline range" or some such language.

---

[2] In briefing submitted prior to the issuance of *United States v. Booker*, 125 S. Ct. 738 (2005), Porter also argued that *Blakely* rendered the entirety of the Guidelines unconstitutional. In post-*Booker* briefing, Porter further argued that *Booker* error is structural error not subject to plain error review. We are not required to reach the merits of these claims because we find the plea agreement enforceable. However, we note *Booker* did not invalidate the Guidelines in toto but rather required they be applied in an advisory manner. *See* 125 S. Ct. at 756–57. Also, our recent decision, *United States v. Gonzalez-Huerta*, No. 04-2045, – F.3d –, 2005 WL 807008, *4 (10th Cir. 2005) (en banc), held that the mistaken application of the Guidelines as mandatory does not constitute structural error.

We decline to do so. Nothing in the record before us shows that the parties intended the exception to stand for anything other than the plain meaning of its operative language. *See United States v. Rubbo*, 396 F.3d 1330, 1333–35 (11th Cir. 2005) (holding that exception to appellate waiver for sentence exceeding "the maximum permitted by statute" referred to statute of conviction, not statutory maximum as defined in *Blakely* and *Booker*, where no indication parties intended otherwise); *United States v. West*, 392 F.3d 450, 460–61 (D.C. Cir. 2004) (holding that exception to appellate waiver for sentence exceeding "statutory maximum" did not allow for *Apprendi v. New Jersey*, 530 U.S. 466 (2000) or *Blakely* challenge where parties did not intend the term to have such meaning). Here, the relevant statute of conviction was 21 U.S.C. § 841, which in this case carried a maximum penalty of 40 years. Porter's 110-month sentence does not exceed the maximum penalty.

Second, even if we were to adopt Porter's interpretation of the waiver clause, his sentence would not exceed the statutory maximum. The Sixth Amendment rule announced in *Apprendi*, 530 U.S. at 490, and extended to the Guidelines in *Booker* is inapplicable where a sentence is determined based on admitted facts. *See Booker*, 125 S. Ct. at 756 ("Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be

admitted by the defendant or proved to a jury beyond a reasonable doubt."). Again, as we have noted, Porter admitted the facts on which the district court determined his sentence. Hence, Porter's sentence is within the scope of the agreement and does not violate the 6th Amendment.

### B. Knowing and voluntary waiver

Porter does not contest the district court's determination that he knowingly and voluntarily waived his appellate rights. Therefore we need not address the issue. *See United States v. Anderson*, 374 F.3d 955, 958–59 (10th Cir. 2004) (concluding plea agreement entered into knowingly and voluntarily because defendant did not argue otherwise on appeal).

### C. Miscarriage of justice

To prove that enforcement of an appellate waiver would result in a miscarriage of justice, a defendant must establish at least one of four circumstances: (1) reliance by the court upon an impermissible factor such as race in imposition of the sentence; (2) ineffective assistance of counsel in connection with the negotiation of the waiver; (3) the sentence exceeds the statutory maximum; or (4) the waiver is otherwise unlawful and seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See Hahn*, 359 F.3d at 1327; *Anderson*, 374 F.3d at 959 (defendant bears burden of establishing miscarriage of justice).

Porter makes three claims under the *Hahn* miscarriage of justice inquiry. First, his attorney was ineffective in negotiating the plea agreement. Second, the sentence imposed exceeds the statutory maximum. Third, he is entitled to resentencing because the district court treated the Guidelines as mandatory in imposing sentence.

*1. Ineffective assistance of counsel*

Porter claims his counsel was ineffective in negotiating the waiver. We decline to reach the merits of this claim. First, Porter did not assert this argument, nor a more general ineffective assistance of counsel claim, in either of his opening briefs, and dedicates only three sentences to the claim in his initial reply brief. Nor did he pursue the argument in post-*Booker* briefing. Therefore we deem it waived. *See Coleman v. B-G Maint. Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1205 (10th Cir. 1997) ("It is not sufficient to merely mention an issue in a reply brief. Issues not raised in the opening brief are deemed abandoned or waived.").

Second, a defendant must generally raise claims of ineffective assistance of counsel in a collateral proceeding, not on direct review. *See United States v. Edgar*, 348 F.3d 867, 869 (10th Cir. 2003). This rule applies even where a defendant seeks to invalidate an appellate waiver based on ineffective assistance of counsel. *See Hahn*, 359 F.3d at 1327 n.13 (noting case did not disturb

-15-

longstanding rule that ineffective assistance claims must generally be brought in collateral proceedings). Here, Porter offers no argument supporting a reason to depart from our general practice and we decline to do so, especially in light of his failure to meaningfully argue the claim.

### 2. *Sentence exceeding statutory maximum*

Porter next alleges enforcement of the agreement would produce a miscarriage of justice because his sentence exceeds the statutory maximum. This claim, similar to his argument regarding the scope of the appellate waiver, is that the term "statutory maximum" under the *Hahn* miscarriage of justice inquiry, *see* 359 F.3d at 1327, should be read to refer to the statutory maximum as defined in *Blakely* and extended to the federal Guidelines in *Booker*. Because "statutory maximum" under the *Hahn* miscarriage inquiry refers to the statute of conviction, this claim has no merit. Porter's sentence does not exceed the 40-year maximum in the statute of conviction.

### 3. *Mandatory application of Guidelines*

Porter's last contention is that his waiver is "otherwise unlawful" and should not be enforced because the district court treated the Guidelines as mandatory. This legal error violates *Booker's* remedial holding, which severed the mandatory aspects of the Guidelines and made them advisory. *See* 125 S. Ct. at 756–57. The relevant question, however, is not whether Porter's sentence is

unlawful in light of *Booker's* remedial holding, but whether subsequent changes in the law render his appeal waiver itself unenforceable.

Supreme Court precedent is quite explicit that as part of a plea agreement, criminal defendants may waive both rights in existence and those that result from unanticipated later judicial determinations. *See Brady v. United States*, 397 U.S. 742, 757 (1970). Brady pled guilty to a life sentence in order to avoid a possible death sentence. *See id.* at 746. Thereafter, the Supreme Court invalidated the death penalty provision in the statute on which Brady's conviction was based. *See United States v. Jackson*, 390 U.S. 570 (1968). Brady argued his guilty plea was involuntary because he based it on the belief he was eligible to receive the death penalty under the statute of conviction. *See Brady*, 397 U.S. at 746. The Supreme Court rejected this argument: "[A] voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." *Id.* at 757.

The Supreme Court reiterated the approach followed in *Brady* in *United States v. Ruiz*, stating:

> [T]his Court has found that the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension

-17-

[including where a] defendant failed to anticipate a change in the law regarding relevant punishments.

536 U.S. 622, 630 (2002) (citations and quotation marks omitted).

We have previously rejected a challenge to the validity of a plea agreement based on a subsequent judicial determination regarding the scope of the Guidelines. *See United States v. Morrison*, 938 F.2d 168, 171 n.4 (10th Cir. 1991). Moreover, some of our fellow circuits have already rejected claims that the change in sentencing law resulting from *Booker* invalidated otherwise lawful plea agreements. *See United States v. Sahlin*, 399 F.3d 27, 31 (1st Cir. 2005) (dismissing as "frivolous" a claim that *Booker* rendered otherwise valid guilty plea involuntary and stating "the possibility of a favorable change in the law occurring after a plea is one of the normal risks that accompany a guilty plea"); *United States v. Bradley*, 400 F.3d 459, 463–66 (6th Cir. 2005) (applying *Brady* to reject a claim seeking to invalidate plea agreement in light of *Booker*). Similarly, we find the change *Booker* rendered in the sentencing landscape does not compel us to hold Porter's plea agreement unlawful.

This outcome is obvious. To hold otherwise would suggest that most appeal waivers in cases pending on direct appeal at the time the Supreme Court decided *Booker* are unlawful. The essence of plea agreements, however, is that they represent a bargained-for understanding between the government and criminal defendants in which each side foregoes certain rights and assumes

certain risks in exchange for a degree of certainty as to the outcome of criminal matters. One such risk is a favorable change in the law. To allow defendants or the government to routinely invalidate plea agreements based on subsequent changes in the law would decrease the prospects of reaching an agreement in the first place, an undesirable outcome given the importance of plea bargaining to the criminal justice system.[3] *See Hahn*, 359 F.3d at 1318.

As a closing point, in our view enforcement of Porter's plea agreement does not seriously affect the fairness, integrity, or public reputation of these judicial proceedings. The plea agreement made clear that Porter faced a 40-year maximum sentence for the charged crimes, that he gave up multiple constitutional and appellate rights in exchange for concessions from the government and, though not explicit in the agreement, that he would be sentenced in accordance with the Guidelines then in effect. The sentence imposed by the district court is in conformance with the terms of the agreement and the understanding expressed by Porter at the plea hearing. Porter faced up to 137 months under the applicable Guidelines and received a sentence of 110 months. Accordingly, we find Porter's argument without merit.

---

[3] This is not to say the parties to plea agreements cannot tailor their needs to allow appeals based on changes in the law. Rather to allow defendants to pursue such appeals as a matter of course where they clearly did not bargain for the right to do so would only serve to undermine the bargaining process.

## Conclusion

We hold the district court did not abuse its discretion in denying Porter's motion to substitute counsel. We further hold the plea agreement is valid and precludes Porter from contesting the validity of his sentence on appeal. The decision of the district court is AFFIRMED, the government's motion to enforce the plea agreement is granted so far as it pertains to Porter's challenge to his sentence, and the appeal dismissed.