**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 20, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MONTGOMERY CARL AKERS,

Defendant-Appellant.

Nos. 07-3215, 08-3323,
08-3343 & 08-3350
(D.C. No. 04-CR-20089-KHV)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **BALDOCK**, **BRORBY**, and **EBEL**, Circuit Judges.

Pursuant to a plea agreement, Montgomery Carl Akers pleaded guilty to

one count of wire fraud in violation of 18 U.S.C. § 1343. After being sentenced,

he filed several motions. Although his plea agreement contains a waiver of his

appeal rights, he has filed four appeals challenging the district court's denial of

his respective post-sentencing motions. The government has requested that the

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
these appeals. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cases are
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

waiver be enforced in each of these four appeals.[1]  We have jurisdiction under

28 U.S.C. § 1291.  Reviewing Mr. Akers's pro se filings liberally, we enforce the

appellate waiver and dismiss all four appeals.

## I.

After accepting Mr. Akers's guilty plea to Count 1 of a Superseding

Indictment charging wire fraud, the district court departed upward from the

advisory Sentencing Guidelines range and sentenced him to 327 months of

imprisonment.  He appealed, and this court affirmed.  *See United States v. Akers*,

261 F. App'x 110, 116 (10th Cir. 2008) ("*Akers I*").[2]

Mr. Akers then filed a number of post-sentencing motions which underlie

the current appeals.  First, he moved for the recusal of the district court judge and

to correct his sentence under Fed. R. Crim. P. 35(a).  In the recusal motion, he

alleged that the district court judge, the Assistant United States Attorney, and

agents in the Federal Bureau of Investigation and U.S. Marshals created a

"scheme and plot to wrongfully charge and convict the defendant . . . pursuant to

an organization . . . called the 'Egregious Conservative Republication Coalition

Network.'"  Dist. Ct. Doc. 231 at 3.  In his Rule 35(a) motion, he alleged bias on

---

[1]     In No. 07-3215, the government requested in its response brief that the waiver be enforced.  In Nos. 08-3323, 08-3343, and 08-3350, the government filed motions to enforce.

[2]     The government indicates that it did not move to enforce the appellate waiver in *Akers I* because the waiver does not cover upward departures.  Thus, *Akers I* did not discuss the appellate waiver.

the part of the district court judge and claimed that the government breached the plea agreement based on the district court's upward departure in his sentencing. The district court's denials of these motions underlie appeal No. 07-3215.

Among other filings, Mr. Akers then filed a motion to void his conviction and sentence under Fed. R. Crim. P. 12(b)(3)(B) for lack of subject matter jurisdiction, which the district court denied. When Mr. Akers appealed, this court granted the government's motion to enforce Mr. Akers's waiver of appellate rights and dismissed his appeal. *See United States v. Akers*, 281 F. App'x 844, 845 (10th Cir.) (per curiam) ("*Akers II*"), *cert. denied*, 129 S. Ct. 291 (2008).

Mr. Akers also filed a motion to order his former counsel to produce documents from his case file, which the district court denied. Mr. Akers then moved for reconsideration of that decision and also moved to withdraw his plea under Fed. R. Crim. P. 12(e), arguing that the district court lacked subject matter jurisdiction, that his conviction was the result of a widespread conspiracy against him, and that the government had breached the plea agreement. The district court's denials of these motions led to appeal No. 08-3323.

In addition, Mr. Akers filed a motion entitled "Motion for Order to Toll the Filing Deadline by the Defendant Pursuant to 28 U.S.C. § 2255 In This Court Until After the Opinion and Order in Case No. 07-3215 (USCA 10) That is Now Pending Before the Tenth Circuit Court of Appeals" in which he sought an order tolling his deadline for filing a § 2255 motion until after this court decided appeal

No. 07-3215. The district court's denial of this motion underlies appeal No. 08-3343.

Finally, Mr. Akers filed a motion for return of seized property in which he objected to the prison's confiscation of his mail. The district court construed the motion as one under Federal Rule of Criminal Procedure 41(g) and overruled it because the loss of mail was not pursuant to any search or seizure in the criminal case. Mr. Akers then filed a motion for reconsideration, and in appeal No. 08-3350, he seeks to appeal the district court's denial of reconsideration.

## II.

In reviewing an appeal brought after a defendant has entered into an appellate waiver as part of a plea agreement, we engage in the three-part analysis set forth in *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam). We determine: (1) whether the appeal is within the scope of the appellate waiver; (2) whether the defendant waived his appellate rights knowingly and voluntarily; and (3) whether enforcing the appellate waiver would result in a miscarriage of justice. *Id.* Having reviewed the government's filings and the responsive filings filed by Mr. Akers in each appeal, for the following reasons we enforce the appellate waiver in all of these appeals and dismiss them.

### Within Scope of the Waiver

The first question is whether the appeals are within the scope of the appellate waiver. *Id.* In determining the waiver's scope, we strictly construe the

-4-

waiver and read any ambiguities therein in favor of the defendant. *Id.* "In so doing, the text of the plea agreement is our guide." *United States v. Anderson*, 374 F.3d 955, 957 (10th Cir. 2004).

Here, the text of the waiver clearly states that Mr. Akers waives "*any right to appeal* or collaterally attack *any matter in connection with this prosecution, conviction, and sentence*," except an upward departure from the Guidelines range. Dist. Ct. Doc. 120, Plea Agt. at 6 (emphasis added). All of the filings in Nos. 07-3215, 08-3323, and 08-3343 clearly invoke matters concerning his prosecution, conviction, and sentence, and thus they fall within the scope of the appellate waiver. *See also Akers II*, 281 F. App'x at 845 (stating "his motion and appeal seek to void his conviction, which is quite clearly a matter relating to his prosecution and conviction," and, accordingly, holding that the appeal of the denial of the Rule 12(b)(3) motion was within the scope of the waiver).

Appeal No. 08-3350, which challenges the denial of reconsideration of the order denying his motion for return of property, is not so clearly within the waiver's scope, however, because the underlying issue is the prison's post-sentencing treatment of Mr. Akers. But Mr. Akers chose to file his motion in the criminal action and seeks to dispute the district court's conclusion that the issue is better suited to a civil suit. Under his rationale, the seizure necessarily is connected to his prosecution, conviction, and sentence. Accordingly, to the

extent he seeks to pursue these issues within the criminal action, they fall within the scope of the waiver.

*Knowing and Voluntary Waiver*

The second question is whether the waiver was knowing and voluntary. *Hahn*, 359 F.3d at 1325. In undertaking this analysis, "we examine whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily" and "we look for an adequate Federal Rule of Criminal Procedure 11 colloquy." *Id.*

The waiver paragraph of the plea agreement states that Mr. Akers "knowingly and voluntarily waives any right to appeal." Dist. Ct. Doc. 120, Plea Agt. at 6. And immediately before the signature block, the plea agreement states that Mr. Akers "acknowledges that the defendant is entering into this agreement and is pleading guilty because the defendant is guilty and is doing so freely and voluntarily." *Id.* at 8-9. Further, in his Petition to Enter a Plea of Guilty, he represented to the court that his plea was made freely and voluntarily. *Id.*, Pet. to Enter Plea at 8. At the change-of-plea hearing, the district court engaged in an extremely thorough discussion of the appeal and collateral-attack waiver, which we have set out in an appendix to this decision. This colloquy indicates that Mr. Akers knowingly and voluntarily entered into the plea agreement and appellate waiver contained therein.

-6-

Mr. Akers's statement in No. 07-3215 that he "did not knowing[ly] and voluntarily waive his rights to appeal a sentence that is miscalculated or in violation of the law or statutes," Aplt. Reply Br. at 17, is conclusory and unsupported. In addition, with regard to the miscalculation aspect, it flies squarely in the face of Mr. Akers' representations at the plea colloquy. Thus, this bare assertion does not persuade us that the waiver was not knowing and voluntary.

In Nos. 08-3323 and 08-3343, Mr. Akers argues that his plea was not knowing and voluntary because the district court's colloquy was inadequate in that it failed to advise him of the elements of wire fraud or wire fraud affecting a financial institution, *see United States v. Gigot*, 147 F.3d 1193, 1198-99 (10th Cir. 1998) (holding that failure to inform defendant of elements of charges rendered plea involuntary), and his admissions were insufficient to establish a factual basis for the plea.[3]

"To convict a defendant of wire fraud under 18 U.S.C. § 1343, the government must show (1) a scheme or artifice to defraud or obtain property by means of false or fraudulent pretenses, representations, or promises, (2) an intent

---

[3]  In a filing in No. 08-3323 entitled "Appellant's Additional Authorities in Response to Appellee's Motion to Enforce an Appeal Waiver," Mr. Akers further alleges that the district court violated Fed. R. Crim. P. 11(b)(1)(N) in some unspecified way. Given the district court's thorough discussion of the appeal and collateral-attack waiver during the change-of-plea hearing, we identify no Rule 11(b)(1)(N) violation.

to defraud, and (3) . . . use of interstate wire . . . communications to execute the scheme." *United States v. Gallant*, 537 F.3d 1202, 1228 (10th Cir. 2008) (first alteration in original) (quotation omitted). Mr. Akers does not explain which of these elements he did not know or understand when he entered his plea. Further, at the change-of-plea hearing, the judge confirmed that Mr. Akers had received a copy of the Superseding Indictment and discussed the elements of Count 1 with his counsel. Dist. Ct. Doc. 227, Plea Hr'g Tr. at 8-10. Mr. Akers represented that he had discussed the case "completely and fully" with his attorney, stating, "[s]he explained in detail what – what the whole of parameters of all that I face." *Id.* at 6. He presents nothing on appeal to contradict these representations. Contrary to his allegations, his admissions during the change-of-plea hearing establish a factual basis for his plea. In sum, he has not established that the plea was not knowing and voluntary. *See Hicks v. Franklin*, 546 F.3d 1279, 1284 (10th Cir. 2008) (explaining defendant's burden in showing his plea was not knowing and voluntary includes overcoming the presumption that his attorney explained the elements to him and demonstrating that he did not receive notice of the elements from any other source).

## *Miscarriage of Justice*

The final question is whether there would be a miscarriage of justice if we enforce the plea agreement. *Hahn*, 359 F.3d at 1325. The enforcement of an appellate waiver would result in a miscarriage of justice "[1] where the district

-8-

court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful." *Hahn*, 359 F.3d at 1327 (quotation omitted). The waiver is otherwise unlawful when an error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotation omitted). "The burden rests with the defendant to demonstrate that the appeal waiver results in a miscarriage of justice." *Anderson*, 374 F.3d at 959.

Mr. Akers argues in No. 07-3215 that the government presented perjured testimony before the grand jury and the district court lacked subject matter jurisdiction. These arguments do not support a claim that "the *waiver* is otherwise unlawful." *Hahn*, 359 F.3d at 1327 (emphasis added) (quotation omitted). "The relevant question . . . is not whether [the defendant's] sentence is unlawful . . ., but whether . . . his appeal waiver itself [is] unenforceable." *United States v. Porter*, 405 F.3d 1136, 1144 (10th Cir. 2005). Mr. Akers has not demonstrated that the waiver itself is unlawful.

In Nos. 07-3215 and 08-3323, Mr. Akers asserts that enforcing the waiver would be a miscarriage of justice because the government has breached the plea agreement. An appellate waiver in a plea agreement may be unenforceable if the government has breached the plea agreement. *United States v. Guzman*, 318 F.3d 1191, 1195 (10th Cir. 2003). Mr. Akers claims that the government breached its

agreement by failing to recommend a sentence within the applicable Guidelines range and failing to request a three-level reduction for acceptance of responsibility.

The record belies his claims. The government agreed in the plea agreement only to move to dismiss the remaining counts, to refrain from filing additional charges rising out of the facts of the indictment, and—contingent on Mr. Akers's manifestation of a continuing acceptance of responsibility—to move for a reduction for acceptance of responsibility. Although in the plea agreement both parties "request that the United States Sentencing Guidelines (Guidelines) be applied by the Court to calculate the applicable sentence in this case and that a sentence consistent with the Guidelines be imposed by the court," Dist. Ct. Doc. 120, Plea Agt. at 4, nowhere in its undertakings does the government promise to refrain from making an argument regarding an upward departure if the district court notified the parties of an intent to depart upward. Rather, the plea agreement reserves the government's right to make any arguments that it deemed appropriate so long as such arguments do not conflict with its undertakings in the agreement. *Id.* at 7-8. Further, Mr. Akers acknowledges in the agreement that "the sentence to be imposed will be determined solely by the United States District Judge. The United States cannot and has not made any promise or representation as to what sentence the defendant will receive." *Id.* at 6.

As for acceptance of responsibility, the government's promise to request the three-level reduction was contingent on Mr. Akers's manifestation of acceptance of responsibility. However, Mr. Akers initiated new fraudulent schemes after his plea and while he was awaiting sentencing. *See Akers I*, 261 F. App'x at 112-13. Accordingly, the government was under no obligation to request the reduction. In sum, we find no evidence that the government breached the plea agreement.

Also in Nos. 07-3215 and 08-3323, Mr. Akers argues that his sentence exceeds the statutory maximum. He asserts that in the year 2000 when his offense was committed, the statutory maximum was five years. This contention is incorrect. Mr. Akers' wire fraud affected a financial institution. *See* Dist. Ct. Doc. 67, Superseding Indictment at 3 (charging that the scheme set forth in Count 1 affected Bank of America, a financial institution); *id.* Doc. 120, Plea Agt. at 4 (stipulating to amount of actual loss suffered by Bank of America); *id.*, Pet. to Enter Plea at 3 (acknowledging that the fraudulent activities affected a financial institution). Since an amendment in 1990, 18 U.S.C. § 1343 has provided for a thirty-year statutory maximum when wire fraud affects a financial institution. *See* Crime Control Act of 1990, Pub. L. No. 101-647, § 2504(i), 104 Stat. 4789, 4861. Because Mr. Akers' sentence did not exceed thirty years, he was not sentenced beyond the statutory maximum.

In Nos. 08-3323, 08-3343, and 08-3350, Mr. Akers also argues that his counsel was ineffective in various ways. It is not clear, however, that any of these arguments are directed toward counsel's effectiveness in the negotiation of the plea and waiver. In any event, allegations of ineffective assistance of counsel are best handled in proceedings under 28 U.S.C. § 2255. *See Porter*, 405 F.3d at 1144; *see also Massaro v. United States*, 538 U.S. 500, 504 (2003) ("In light of the way our system has developed, in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance."). Accordingly, we decline to reach the merits of these arguments. *See Porter*, 405 F.3d at 1144.

Finally, Mr. Akers also contends in these appeals that enforcing the waiver would result in a miscarriage of justice because (1) he is actually innocent of wire fraud, and (2) his conviction is infirm under Fed. R. Crim. P. 12(b)(3)(B) because the district court lacked subject matter jurisdiction. Even assuming these arguments would satisfy the miscarriage of justice element, Mr. Akers' innocence arguments are directed more toward legal innocence than actual innocence. As for the Rule 12(b)(3)(B) argument that the district court lacked subject matter jurisdiction, we have already held that his waiver bars such a Rule 12(b)(3) motion. *See Akers II*, 281 F. App'x at 845.

## III.

Mr. Akers's "Motion to Correct the Record on Appeal on What the Subject Matter Being Appealed Is by the Appellant" in No. 08-3323 and any other outstanding motions are DENIED as moot. The government's argument for enforcement of the appellate waiver contained in its response brief in No. 07-3215 is ACCEPTED, its motions for enforcement in Nos. 08-3323, 08-3343, and 08-3350 are GRANTED, and these appeals are DISMISSED.

Entered for the Court

David M. Ebel
Circuit Judge

# APPENDIX

## Change-of-Plea Hearing

THE COURT: Mr. Akers, do you understand that in the typical criminal case, the defendant has extremely broad rights to directly appeal or indirectly challenge all of the actions which the Court has taken with regard to the prosecution, the conviction, and the sentence in the case?

THE DEFENDANT: Yes.

THE COURT: Do you realize that in paragraph 10 of this plea agreement you would be giving up the vast majority of those rights?

THE DEFENDANT: Yes.

THE COURT: Basically, your only rights in that regard would be if the Court gave you a sentence which is higher than what the guideline range calls for.

THE DEFENDANT: Yes, ma'am.

THE COURT: So, for example, you could not in any way appeal or indirectly challenge any of the Court's decisions up-to-date in this case.

THE DEFENDANT: Except for sentencing if it was outside the guidelines, but up to the —

THE COURT: Well, all of the decisions that the Court has made so far, about your attorneys, about all of your many court appearances, all of that is — will be water under the bridge and you cannot challenge that in any way.

THE DEFENDANT: Right.

THE COURT: Same thing with all the lawyers that you've had. You can't go back and claim that they didn't give you effective assistance of counsel and somehow try and use that to set aside your conviction or your sentence.

THE DEFENDANT: No.

THE COURT: You can't complain about the prosecution or any conduct by [the AUSA]. Or anybody else in the United States Attorney's Office.

-14-

THE DEFENDANT:  Yeah.  That's the agreement.

THE COURT:  Okay. Just want to make sure you understand. You can't make any additional claims against me that I'm biased and I should recuse and that I'm the wrong judge to be sitting on your case.

THE DEFENDANT:  Right.  I understand that.

THE COURT:  And as to sentencing, if you ask me to give you a sentence which is lower than the guidelines range and I deny your request, you're basically stuck with my decision on that subject.

THE DEFENDANT:  Yes.

THE COURT:  If you and I have a disagreement about what sentencing guidelines apply and I sentence you under guidelines which are more strict than you believe should apply, that's also the end of the road for you in terms of litigating that issue.

THE DEFENDANT:  Yes.

THE COURT:  And you understand that you would otherwise have much broader rights in this regard?

THE DEFENDANT:  Yes.

THE COURT:  And you want to give them up as part of the overall plea agreement in your case?

THE DEFENDANT:  Yes.

. . .

THE COURT:  In the plea agreement, the government proposes to make certain recommendations with regard to your sentence.  Do you realize that those are only recommendations and that they're not binding on the Court in any way?

THE DEFENDANT:  Yes.

THE COURT:  So the sentence you received is strictly up to the Judge and not the prosecutor?

-15-

THE DEFENDANT:  Right.

. . .

THE COURT:  So if I take all of these things into account and for some reason decide not to go along with the government's recommendations, do you realize that would not have any effect on either your plea agreement or your guilty plea in this case?

THE DEFENDANT:  Yes.

THE COURT:  So you could not come back to court and get out of the agreement or withdraw your plea and go to trial.

THE DEFENDANT:  Right.

THE COURT:  Basically, a deal is a deal in this context, right?

THE DEFENDANT:  And you got it.  I'll keep my word.  Yes.

THE COURT:  Okay.  Has anybody forced or threatened you to get you to enter this plea?

THE DEFENDANT:  No.

THE COURT:  Are you telling me that this is a free and voluntary plea?

THE DEFENDANT:  Yes.

THE COURT:  That you're only pleading guilty because you are guilty as charged?

THE DEFENDANT:  That's correct.

THE COURT:  And I want to be absolutely certain about this because we've had many court hearings and you've made a lot of accusations in this case about how the government has just fabricated this charge and it's part of a gigantic conspiracy, et cetera.

. . .

-16-

And you understand, though, that – I mean, obviously, I'll hear your evidence and your arguments which might bear on sentencing, but to the extent that these conspiracies and collusions and so forth may have happened in the past and may have resulted in you being prosecuted or may have caused other problems for you in the past in relationship to this case, by entering this plea, you're giving up your right to complain about that, to file any lawsuits, to file any appeals, all that's water under the dam except insofar as it may affect your sentence.

THE DEFENDANT:  And it is, Your Honor . . . .

Dist. Ct. Doc. 227, Plea Hr'g Tr. at 30-40.