FILED
United States Court of Appeals
Tenth Circuit

April 8, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

CAMILO BENITEZ-DIAZ, also
known as Orlando Sausedo-Ramoz,

    Defendant-Appellant.

No. 08-3000

(D.C. No. 6:07-CR-10084-WEB-1)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **BALDOCK** and **MURPHY**, Circuit Judges.

---

Defendant Camilo Benitez-Diaz pled guilty to distributing methamphetamine,
in violation of 21 U.S.C. § 841(a)(1). See Fed. R. Crim. P. 11(c). He now appeals,
alleging various errors committed by the district court at his plea colloquy and
sentencing hearing, as well as the ineffective assistance of his trial counsel. In
response, the Government requests that we enforce a waiver of appeal included in
Defendant's plea agreement. Our jurisdiction arises under 28 U.S.C. § 1291. We
enforce the waiver in part and remand for resentencing.

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

I.

In April 2007, Defendant was charged with four counts of distributing methamphetamine. In exchange for Defendant's guilty plea, the Government agreed to drop the first count in the indictment. In so doing, Defendant admitted to knowingly distributing approximately 28 grams of methamphetamine to an undercover FBI agent on three separate occasions in 2006.

On August 28, 2007, the district court conducted Defendant's plea colloquy. During the colloquy, the district court erroneously described the charges against Defendant as "*possesse[ing]*" methamphetamine "*with the intent to distribute.*" (emphasis added). In fact, each count in the indictment charged Defendant with "knowingly, intentionally, and unlawfully *distribut[ing]* approximately 28 grams of . . . methamphetamine." (emphasis added). Neither the Government nor defense counsel corrected the district court's mistake. Also at the colloquy, the district court asked Defendant: "Do you understand by entering a free and voluntary plea of guilty you may be giving up any right to challenge your *conviction* upon appeal?" (emphasis added). Defendant answered "yes" to the district court's inquiry. In fact, the waiver in the plea agreement was much broader than the district court's description—providing that Defendant waived his "right to appeal or collaterally attack any matter in connection with [his] *prosecution, conviction and sentence.*" (emphasis added). Again, neither the Government nor defense counsel corrected the

district court's misstatement. At the conclusion of the colloquy, the district court accepted Defendant's guilty plea. On November 9, 2007, the district court sentenced Defendant to 108 months imprisonment.

Defendant appeals, arguing (1) the plea agreement is invalid because the district court misstated the elements of the charged offenses during the plea colloquy, (2) the district court erred by not allowing allocution for Defendant during sentencing, (3) the district court erred by failing to verify that Defendant and his counsel read and discussed the Presentence Report prior to the sentencing hearing, and (4) his trial counsel was ineffective. Following Defendant's appeal, the Government filed a motion before this Court to enforce Defendant's appellate waiver. See Fed. R. App. P. 27 and 10th Cir. Rule 27.2(A)(1)(d). We first hold that the district court's comments during the colloquy narrowed the scope of the waiver. We then grant in part the Government's motion to enforce the appellate waiver. Finally, we remand for proper allocution.

## II.

A defendant can forfeit the right of appeal if he waives that right in an enforceable plea agreement. See United States v. Smith, 500 F.3d 1206, 1210 (10th Cir. 2007). We assess the validity of such appellate waivers under the three-pronged analysis set forth in United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc). Accordingly, we must determine (1) whether the disputed appeal falls within the scope of the appeal waiver, (2) whether the defendant knowingly and voluntarily

3

waived his right to appeal, and (3) whether enforcement of the waiver would result in a miscarriage of justice. See id.

A.

Under the first prong articulated in Hahn, we strictly construe appellate waivers—resolving any ambiguity in scope in favor of a defendant's appellate rights. See id. Moreover, we interpret the waiver according to contract principles and what the defendant would have reasonably understood when he entered the plea agreement. See United States v. Arevalo-Jimenez, 372 F.3d 1204, 1206 (10th Cir. 2004).

Here, Defendant agreed to a very broad waiver of his appellate rights. The plea agreement states:

> Defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, conviction and sentence. . . . By entering into this agreement, the defendant knowingly waives any right to file and pursue an appeal of a sentence imposed which is within the guideline range determined appropriate by the court. The defendant also waives any right to challenge a sentence or otherwise attempt to modify or change his sentence in a manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255 [except as limited by United States v. Cockerham, 237 F.3d 1179, 1187 (10th Cir. 2001)], a motion brought under Title 18, U.S.C. § 3582(c)(2) and a motion brought under Fed. Rule of Civ. Pro. 60(b).

Defendant seemingly recognizes that his entire appeal falls within the scope of the plain language of the plea agreement. He argues, however, that the district court

4

narrowed the scope of the waiver at the plea colloquy in stating: "Do you understand by entering a free and voluntary plea of guilty you may be giving up any right to challenge your *conviction* upon appeal?" (emphasis added). Specifically, Defendant contends that because the district court only mentioned the right to appeal his *conviction*, he is entitled to appeal his *sentence*.

As noted, the plain language of the plea agreement is quite clear that the waiver includes Defendant's right to appeal his sentence. District courts, however, are required to "inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N). The district court's description of the appellate waiver at the colloquy is decidedly narrower than the waiver in the plea agreement. The question before us, therefore, is whether the district court's mistake created an ambiguity in the waiver's scope.

Generally, an ambiguity which might negate a defendant's prior written waiver will *not* arise when a district court's comments *follow* the signing and entry of a plea agreement. See Smith, 500 F.3d at 1211; United States v. Wilken, 498 F.3d 1160, 1167 (10th Cir. 2007); Arevalo-Jimenez, 372 F.3d at 1206. In Wilken, however, we concluded that an ambiguity may be sufficient to invalidate a waiver if the district court's mischaracterization occurs just *prior* to signing the plea agreement. 498 F.3d at 1168. In that case, the district court's description of the waiver at the colloquy—immediately before the defendant signed the plea agreement and entered

5

his plea—was narrower than the extent to which the defendant waived the right to appeal his sentence in the plea agreement. See id. We reasoned the defendant "could not be faulted for relying upon the court's explanation, rather than his own understanding, as the definitive construction of the agreement he would almost immediately sign." Id. Because no clarification was provided for the defendant, nor an opportunity for defense counsel to clear up the mistake, we held that the waiver was ambiguous at the time of signing. Id. Ultimately, we resolved the ambiguity in favor of the defendant and allowed him to appeal his sentence. See id. at 1169.

Defendant signed the plea agreement the same day as the colloquy, but we cannot discern from the record whether it was signed immediately before or after the colloquy. We must, therefore, give Defendant the benefit of the doubt and assume the agreement was signed just after the colloquy. See Hahn, 359 F.3d at 1325 (noting any ambiguities in determining the waiver's scope must be resolved in favor of the defendant). As in Wilken, we are left with the broad language in the agreement on the one hand, and the later, narrowing language of the district court on the other hand. As a result, we must strictly construe the scope of the waiver and resolve the resulting ambiguity in favor of Defendant. Wilken, 498 F.3d at 1168-69; Hahn, 359 F.3d at 1325. Accordingly, we conclude that challenges to Defendant's conviction are within the scope of the waiver, but not those matters concerning his

6

sentence.[1]  Before we address the merits of Defendant's sentencing appeal, however, we must return to our <u>Hahn</u> inquiry and determine whether to enforce the waiver in connection with Defendant's remaining two arguments, *i.e.*, (1) the plea agreement is invalid because the district court misstated the elements of the charged offenses during the plea colloquy, and (2) Defendant's trial counsel was ineffective.[2]

B.

Under the second prong of <u>Hahn</u>, we are required to "ascertain whether the defendant knowingly and voluntarily waived his appellate rights."  <u>Id.</u>  Two factors are central to this analysis: (1) the language of the plea agreement, and (2) an adequate colloquy under Federal Rule of Criminal Procedure 11.  <u>See</u> <u>id.</u>  Defendant bears the burden of demonstrating that his waiver was not knowing and voluntary. <u>See</u> <u>United States v. Ibarra-Coronel</u>, 517 F.3d 1218, 1222 (10th Cir. 2008).

As previously noted, the language of the plea agreement is very clear regarding Defendant's waiver.  In the agreement, Defendant swears that he "had sufficient time to discuss the case, the evidence, and this agreement with [his]

---

[1] We emphasize the scope of the waiver must be determined on a case-by-case basis and is heavily dependent on the particular facts found in the record. We also note that if the Government or defense counsel clarified the waiver's scope at the colloquy or sometime prior to the signing of the agreement, any potential ambiguity would have been removed.  <u>See</u> <u>Wilken</u>, 498 F.3d at 1168.

[2] Our remaining analysis—the knowing and voluntary nature of the waiver (<u>Hahn</u>'s second prong) and whether the waiver would result in a miscarriage of justice (<u>Hahn</u>'s third prong)—only pertains to the waiver of Defendant's right to appeal matters in connection with his *conviction*.

attorney and [he] is fully satisfied with the advice and representation provided by [his] counsel." Moreover, Defendant "acknowledge[d] that he has read the plea agreement, understands it and agrees it is true and accurate" and that he "enter[ed] into this agreement and is pleading guilty because [he] is guilty and is doing so freely and voluntarily." Thus, the language of the agreement itself does not raise any concerns about the knowing and voluntary nature of Defendant's waiver.

Likewise, the Rule 11 colloquy was adequate. First, Defendant stated that he understood by entering a guilty plea he would be giving up the right to challenge his conviction on appeal. Second, Defendant informed the district court that his guilty plea was the result of the plea agreement, and he swore that he read, understood, and discussed the plea agreement with his attorney. Finally, Defendant's counsel confirmed at the colloquy that Defendant "understands he is waiving his right to appeal and collateral attack by entering into this plea." Defendant, nevertheless, argues the waiver was not knowing and voluntary because the district court misstated the elements of the charged offenses. We disagree.

First, the district court's misstatement regarding the *charges* against Defendant does not, by itself, invalidate the *waiver*. See Smith, 500 F.3d at 1213 (noting that a separate aspect of the proceeding in which the district court commits legal error does not invalidate a waiver). Thus, allowing the district court's error in describing the charged offenses to "render [the] waiver unlawful would nullify the waiver based on the very sort of claim it was intended to waive." Id. "The essence of plea

8

agreements . . . is that they represent a bargained-for understanding between the government and criminal defendants in which each side forgoes certain rights and assumes certain risks in exchange for a degree of certainty as to the outcome of criminal matters." United States v. Porter, 405 F.3d 1136, 1145 (10th Cir. 2005); see also Ibarra-Coronel, 517 F.3d at 1220, 1223 (holding the district court's misstatement that the defendant's maximum penalty was 120 months incarceration, when in fact her *minimum* penalty was 120 months, did not make the waiver unknowing and involuntary).

Second, even if the district court's description of the *charge*s applied to Defendant's *waiver*, the mistake did not render the waiver unknowing and involuntary. Defendant relies on Hicks v. Franklin, 546 F.3d 1279 (10th Cir. 2008), for the proposition that we must invalidate the entire plea agreement, including the waiver. In Hicks, we granted habeas relief to a defendant who previously pled guilty to second degree murder. Because the trial court failed to explain to the defendant that a "depraved mind" was an element of murder in the second degree, we held the defendant's guilty plea was not knowing and voluntary. Id. at 1287. Hicks, however, is readily distinguishable from this case.

In Hicks, our ruling was premised on the "clearly established . . . rule that a defendant must receive notice of all critical elements of the charge to which he pleads guilty." Id. at 1284. This rule was particularly significant in Hicks because the State orally amended the charged offense from first degree to second degree

9

murder *at the plea hearing*. Id. at 1281. Thus, the only notice available to the defendant regarding the new charge against him was the trial court's description—a description which "entirely omitt[ed] the fact that Oklahoma's second degree murder statute contain[ed] a mens rea element." Id. at 1286.

In contrast, the charges against Defendant here were spelled out in the indictment and the plea agreement. Both of these documents gave adequate written notice of all the critical elements of the charged offenses. Additionally, prior to the colloquy, Defendant signed a petition offering his "plea of 'GUILTY' with full understanding of all the matters set forth in the Indictment and in this petition." Finally, Defendant attested at the colloquy that he understood all the charges set forth against him in the indictment. Thus, unlike in Hicks, Defendant clearly had notice of the elements of the charges against him. Accordingly, we conclude Defendant's waiver was knowing and voluntary.

## C.

The third prong of the Hahn analysis requires us to determine whether enforcement of the waiver would result in a miscarriage of justice. 359 F.3d at 1327. A miscarriage of justice occurs in one of four scenarios: (1) when the district court relies on an impermissible factor such as race; (2) when ineffective assistance of counsel underlies the negotiation of the waiver; (3) when the sentence exceeds the statutory maximum; or (4) when the waiver is otherwise unlawful. See id. at 1327. A waiver is otherwise unlawful when it seriously affects the fairness, integrity, or

10

public reputation of judicial proceedings. See id. (citing United States v. Olano, 507 U.S. 725, 732 (1993)).

The district court did not rely on an impermissible factor and the sentence does not exceed the statutory maximum. Defendant argues, however, that he received ineffective assistance of counsel in negotiating the appellate waiver. The rule is well established, however, that ineffective assistance of counsel claims should be raised in a collateral proceeding. Porter, 405 F.3d at 1144; United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc) ("Ineffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal."). This general "rule applies even where a defendant seeks to invalidate an appellate waiver based on ineffective assistance of counsel." Porter, 405 F.3d at 1144. Thus, only in rare instances will we address an ineffective assistance claim on direct appeal. United States v. Edgar, 348 F.3d 867, 869 (10th Cir. 2003). Neither the record, nor Defendant's brief, provide any reason to suggest this case qualifies as one of those rare exceptions. Accordingly, we conclude Defendant must raise his ineffective assistance claim in a collateral proceeding.

Defendant also argues the waiver is otherwise unlawful for the same reasons discussed supra in Part II.B. Specifically, Defendant contends the district court's misstatement of the charged offenses seriously affected the fairness, integrity, and reputation of judicial proceedings. We disagree. As already noted, the error did not impact Defendant in any material way. Accordingly, we conclude the waiver would

11

not result in a miscarriage of justice. The Government's motion to enforce the waiver is, therefore, granted so far as it pertains to Defendant's conviction.

### III.

Having determined the appellate waiver does not cover challenges to Defendant's sentence, see supra Part II.A, we now turn to Defendant's sentencing appeal. Defendant contends the district court erred (1) by failing to provide an opportunity for allocution at sentencing, and (2) by failing to verify that Defendant and his counsel read and discussed the Presentence Report (PSR) prior to the sentencing hearing.

### A.

District courts are required to "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." Fed. R. Crim. P. 32(i)(4)(A)(ii). This rule codifies the common law right of allocution. See United States v. Jarvi, 537 F.3d 1256, 1261 (10th Cir. 2008). A district court's failure to comply with this rule is per se prejudicial and requires remand. See id. at 1262. Defendant argues the district court did not provide an opportunity for allocution. In response, the Government argues that the following discourse at sentencing satisfied Rule 32:

> THE COURT: Any Objection to the proposed sentence by the Government?
> THE GOVERNMENT: No, your Honor.
> THE COURT: By the Defendant?
> DEFENSE COUNSEL: No, sir.

THE COURT:  Did [Defendant] get the word, Ms. Rivera?
Any objection to the sentence?
DEFENDANT:  No.

We agree with Defendant that this exchange does not meet Rule 32 requirements.

The district court merely asked Defendant whether he had any objection to the proposed sentence.  This question easily could have been interpreted as purely legal in nature, or requiring a simple yes or no answer.  Nowhere did the district court ask Defendant to make a statement on his own behalf.[3]  We acknowledge the district court addressed Defendant personally (through his translator), as required by Rule 32.  See Fed. R. Crim. P. 32(i)(4)(A)(ii).  Moreover, we recognize a Defendant's right to allocution is not without limits.  See United States v. Muniz, 1 F.3d 1018, 1025 (10th Cir. 1993).  That said, for us to infer that Defendant realized this limited inquiry also meant he was permitted to present information for the purpose of mitigating his sentence requires a significant leap.  See Fed. R. Crim. P. 32(i)(4)(A)(ii); see also Jarvi, 537 F.3d at 1261 (citing Green v. United States, 365

---

[3]    The Government argues this case is similar to Johnston v. United States, 303 F.2d 343 (10th Cir. 1962), in which the district court asked the defendants: "Is there any reason why sentence should not be imposed at this time that either one of you have to present?"  Id. at 344.  While not a model allocution procedure, the district court's question in Johnston likely alerted the defendants of their opportunity to say something on their behalf about the proposed sentences.  In contrast, the district court's terse question here—"Any Objection to the proposed sentence?"—leaves serious doubt as to whether Defendant understood his right to allocution.   See United States v. Gerrow, 232 F.3d 831, 833 (11th Cir. 2000) ("The district court must clearly inform the defendant of his allocution rights, leaving no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing.").

U.S. 301, 304 (1961)). Accordingly, we conclude Defendant was denied proper allocution and we remand for resentencing. See id.

B.

Defendant's final argument is the district court erred by failing to verify that he and his counsel read and discussed the PSR prior to the sentencing hearing, as required by Fed. R. Crim. P. 32(i)(1)(A). See United States v. Romero, 491 F.3d 1173, 1179 (10th Cir. 2007). The Government concedes the district court did not inquire whether Defendant and his attorney discussed the PSR. Because Defendant did not object at sentencing, however, we review only for plain error. See United States v. Mendoza, 543 F.3d 1186, 1190 (10th Cir. 2008). To meet this standard, Defendant must demonstrate (1) error, (2) that is plain, (3) which affects Defendant's substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings. See id.

Defendant submits no argument that the district court's error prejudiced him. Under normal circumstances, that would be the end of the matter. See Romero, 491 F.3d at 1180 (noting remand will not be granted when a district court "fail[s] to verify that the defendant had the opportunity to read and discuss the PSR" *unless* the defendant can "demonstrate prejudice resulting from [the] . . . error"). Because we are remanding for proper allocution, however, we will allow the district court to address this issue on remand in accordance with Fed. R. Crim. P. Rule 32(i)(1)(A).

IV.

We grant the Government's motion to enforce the appellate waiver in part, and

DISMISS Defendant's appeal as to his conviction.[4] However, because (1) the district

court narrowed the scope of Defendant's waiver at the plea colloquy, and (2) the

district court committed prejudicial error during sentencing, we REMAND for

further proceedings consistent with this Order and Judgment.[5]

Entered for the Court,


Bobby R. Baldock
United States Circuit Judge

---

[4] We provide no opinion on the merit of Defendant's ineffective assistance of counsel claim, but note that he may pursue such a claim in a collateral proceeding.

[5] Following oral argument, Defendant filed an Unopposed Motion to Correct His Briefs and Modify His Request for Relief. Specifically, Defendant requested that—if we determined the district court committed reversible error during the plea colloquy—we vacate the judgment against Defendant and allow him the opportunity to withdraw his plea on remand. Because we only remand for the limited purpose of correcting the district court's sentencing error, and not for reversible error at the plea colloquy, we deny Defendant's motion as moot.