**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 4, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOSEPH LYNN THORNBURGH,

Defendant-Appellant.

No. 09-5079
(D.C. No. 4:08-CR-00181-JHP-1)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **EBEL**, and **GORSUCH**, Circuit Judges.

---

On December 15, 2008, defendant Joseph Lynn Thornburgh pleaded guilty

to one count of being a felon in possession of firearms and ammunition and to

criminal forfeiture of the firearms and ammunition. Thornburgh and the United

States executed a written plea agreement, which provides, among other things,

that Thornburgh "knowingly and voluntarily" "waives the right to directly appeal

---

[*] This panel has determined unanimously that oral argument would not
materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2);
10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral
argument. This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and
10th Cir. R. 32.1.

the conviction and sentence pursuant to 28 U.S.C. §1291 and/or 18 U.S.C. §3742(a)," but "reserves the right to appeal from a sentence which exceeds the statutory maximum." Plea Agrmt. at 3, ¶ 3(a), (b). In the plea agreement, Thornburgh acknowledges that his guilty plea "authorizes the Court to impose any sentence up to and including the maximum sentence set forth in the United States Code," *id.* at 5, ¶ 6, which, he further acknowledges, is "ten (10) years of imprisonment and a fine of not more than $250,000," *id.* at 13, ¶ 14(a).

The plea agreement also provides that Thornburgh understands that the court may impose a fine, and he agrees

> to submit to interviews by the United States Attorney's Financial Litigation Unit regarding the defendant's financial status, and to complete and submit a financial statement, under oath, not later than two weeks after the date of this plea agreement. The defendant understands that, by law, interest accrues on any remaining balance of the debt.

*Id.* at 5-6, ¶ 7. And the agreement additionally provides that "[i]f the sentencing Court should impose any sentence up to the maximum established by statute, the defendant cannot, for that reason alone, withdraw defendant's guilty plea, but will remain bound to fulfill all of defendant's obligations under this agreement." *Id.* at 15, ¶ 14(c).

At sentencing, the court calculated the advisory guideline range to be zero to six months' imprisonment, a term of probation not to exceed three years, a term of supervisory release following incarceration between two and three years, a fine

of $250-$5,000, and a special assessment of $100.  The court imposed a sentence

of three years' probation, with no term of imprisonment, but it also imposed the

statutory maximum fine of $250,000.  The court found that Thornburgh had

refused to comply with numerous requests from his counsel and the probation

office to provide an affidavit fully describing his financial resources as required

under 18 U.S.C. § 3664(d)(3).  It further found that the record clearly disclosed

that Thornburgh "demonstrated great cunning and business acumen" and had "the

ability to earn significant income."  Tr. Sent'g Hrg. of May 18, 2009, at 145.

> Clearly, the defendant has undisclosed financial resources and
> the ability to earn income.  Because the defendant has a history of
> amassing financial assets and has failed to cooperate by providing
> financial information, a substantial fine set at the statutory maximum
> is appropriate.  A fine outside of the guideline range will promote
> respect for the law, provide just punishment, and provide adequate
> deterrence to criminal conduct.

> The burden is upon the defendant to show that any financial
> penalty exceeds his earning ability.  The defendant has failed to
> demonstrate such; therefore, the court orders a fine in the amount of
> $250,000.

*Id.* at 146 (citations omitted).

Despite his appeal waiver, Thornburgh has appealed, indicating his intent

to raise two issues on appeal:  1) the fine imposed violates the Eighth

Amendment; and 2) the district court failed to give notice of its intention to go

beyond the sentencing guidelines and impose a greater sentence than

recommended.  Docketing Statement at 4.  Seeking to enforce Thornburgh's

waiver of his appellate rights, the United States has filed a motion to dismiss the appeal in accordance with *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004) (en banc) (per curiam).

In determining whether to dismiss an appeal based on a waiver of appellate rights, we consider "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *Id.* at 1325. Thornburgh, who is represented on appeal by retained counsel, has not filed a response to the government's motion to dismiss, despite being directed to do so and given numerous extensions of time. Nonetheless, we have carefully reviewed the plea agreement, the transcripts of the change of plea and sentencing hearing, and Thornburgh's intervening motion to withdraw his plea, with the pertinent *Hahn* factors in mind. For the reasons stated below, we grant the government's motion and dismiss the appeal.

We first consider whether the appeal falls within the scope of the waiver of appellate rights and conclude that it does. Thornburgh waived his right to appeal both his conviction and his sentence and reserved only the right to appeal a sentence that exceeds the statutory maximum; he did not reserve the right to appeal either an illegal sentence or one that departed upward from the guidelines range. In *United States v. Green*, 405 F.3d 1180, 1194 (10th Cir. 2005), we held that the term "statutory maximum" in *Hahn* "refers to the upper limit of

punishment that Congress has legislatively specified for the violation of a given statute." Neither of the issues Thornburgh wishes to raise on appeal relate to whether his sentence exceeded the statutory maximum, so neither is within his reservation of appellate rights. Rather, Thornburgh's contentions that the amount of the fine was excessive under the Eighth Amendment and that the district court erred in not giving him prior notice of its intent to depart upward are both within the scope of his waiver of appellate rights.

We next consider whether Thornburgh knowingly and voluntarily waived his appellate rights, looking primarily to the language of the plea agreement and the adequacy of the Rule 11 colloquy. *See Hahn*, 359 F.3d at 1325. Thornburgh bears the burden of showing that his plea was not knowing and voluntary. *Id.* at 1329. Paragraph 3 of the plea agreement details the waiver of appellate and post-conviction rights.[1] It begins with a statement that Thornburgh is "knowingly and voluntarily" waiving his right to appeal, and it concludes with the following statement: "The defendant expressly acknowledges that counsel has explained his appellate and post-conviction rights; that defendant understands his rights; and that defendant knowingly and voluntarily waives those rights as set forth above." Plea Agrmt. at 3, 4, ¶ 3. Thornburgh separately signed the plea agreement at the conclusion of this acknowledgment and also initialed each page of the agreement

---

[1] In addition to waiving his right to directly appeal his conviction and sentence, Thornburgh waived various post-conviction rights, which are not at issue here.

and signed it at the end. Thus, the language of the plea agreement demonstrates that the waiver of appellate rights was knowing and voluntary.

The district court conducted a thorough Rule 11 plea colloquy at the change of plea hearing on December 15. Thornburgh acknowledged during the colloquy that he had sufficient time to confer with his appointed counsel and that he was satisfied with her representation. When pressed on whether he was *completely* satisfied with his counsel, Thornburgh was less certain, so the court inquired further. Thornburgh explained that he was not advised that he could have waived his right to speedy trial and then asked for a continuance so that his conviction on the firearms offense would not occur before his upcoming trial in a separate proceeding on money laundering and fraud charges. Thornburgh was concerned about having evidence of a recent felony conviction, i.e., the firearms offense, introduced at that trial.

Thornburgh's counsel commented that both she and the court had previously advised Thornburgh that even if he waived his speedy trial rights, it did not guarantee him a continuance, and that the case law did not support granting a continuance for the purpose of delaying his conviction until after the trial in the other criminal proceeding was concluded. Following counsel's comments, the court asked Thornburgh if he was willing to go forward with his guilty plea, to which he replied, "Absolutely." Tr. Plea Hrg. at 10.

Later in the colloquy the court asked Thornburgh if there was anything he did not understand about the elements of the crime with which he was charged. Thornburgh said that he had thought that if his prior felonies were more than ten years old, then he could possess firearms, though he had since learned that was not true. He also said that during an unrelated search of his house in 2003, the agent conducting the search found the guns, but then left them in Thornburgh's possession despite his knowledge of Thornburgh's prior felonies. Following this statement, the court confirmed that Thornburgh did understand the essential elements of the crime with which he was charged. And the government then recited the evidence against Thornburgh, including the fact that Thornburgh had acquired several of the firearms though strawman purchases, which suggested that he knew it was unlawful for him to possess them.

Thornburgh told the court that he "[a]bsolutely" understood all the provisions of the plea agreement and had no questions about the agreement. *Id.* at 22. The court specifically asked Thornburgh if he understood that he was waiving his right to appeal and to collaterally attack his sentence, and Thornburgh said he did. The court also confirmed Thornburgh's understanding that the court could impose any sentence up to the statutory maximum, which it said was no more than ten years in prison and/or a fine of up to $250,000. Thornburgh acknowledged that he "freely and voluntarily agree[d] to the written plea agreement," that his "plea of guilty and the waiver of [his] rights was voluntary

and completely of [his] own free choice," and that no one had threatened him or made any promises to him, other than those stated in the plea agreement, in an effort to coerce him to plead guilty. *Id.* at 27-28. Thornburgh then admitted each element of the charged offense and reiterated his agreement to forfeit the firearms and ammunition.

The district court accepted Thornburgh's guilty plea, finding that he was competent to make the plea and that it was entered "freely and voluntarily with a full understanding of its consequences." *Id.* at 32. The plea colloquy demonstrates that Thornburgh knowingly and voluntarily entered his guilty plea and waived his appellate rights.

Several months after entering his guilty plea, Thornburgh discharged his appointed counsel and retained counsel to represent him. During the course of the subsequent sentencing proceedings, at which the government contended that Thornburgh should receive a sentence of imprisonment and Thornburgh argued that he should not, Thornburgh told the court that the only reason he had pleaded guilty was because the attorney who was first appointed to represent him had told him that the advisory guidelines range for his firearms offense was zero to six months' probation. Concerned with Thornburgh's statements, the court postponed the sentencing hearing for a week. On the day the hearing was to recommence, Thornburgh filed a motion to withdraw his guilty plea. He contended that the plea was not knowing and voluntary and he believed he would receive probation

if he entered the plea. He also stated that he had been denied the opportunity to contest an invalid warrant.

That afternoon, the court held an evidentiary hearing on Thornburgh's motion to withdraw his plea, at which it heard testimony from Thornburgh's first appointed counsel, who allegedly made the representation about probation, Thornburgh's second appointed counsel, who represented him during the plea negotiations, and Thornburgh himself. The court also reviewed the written plea agreement and transcripts of the change-of-plea hearing and Thornburgh's statement at the earlier sentencing hearing, and it heard extensive arguments from the government and defense counsel. The court considered the evidence before it in light of the factors set forth by this court in *United States v. Gordon*, 4 F.3d 1567, 1572 (10th Cir. 1993), and concluded that Thornburgh had not met his burden of showing a fair and just reason to withdraw his plea. The court therefore denied Thornburgh's motion to withdraw his guilty plea and proceeded with sentencing. Thornburgh's docketing statement does not indicate any intent to challenge on appeal the district court's denial of his motion to withdraw his guilty plea.

Both the plea agreement itself and the plea colloquy demonstrate that Thornburgh's plea was knowing and voluntary. Neither Thornburgh's subsequent statements to the court nor the testimony of his previous attorneys about their discussions with him cast doubt on that fact. Accordingly, we

conclude that Thornburgh's waiver of his appeal rights was knowing and voluntary. *See Hahn*, 359 F.3d at 1325.

Even if the waiver was knowing and voluntary and the issues Thornburgh wishes to appeal are within the scope of that waiver, however, we will not enforce the waiver if it would result in a miscarriage of justice.

> To prove that enforcement of an appellate waiver would result in a miscarriage of justice, a defendant must establish at least one of four circumstances: (1) reliance by the court on an impermissible factor such as race in imposition of the sentence; (2) ineffective assistance of counsel in connection with the negotiation of the waiver; (3) the sentence exceeds the statutory maximum; or (4) the waiver is otherwise unlawful and seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*United States v. Porter*, 405 F.3d 1136, 1143 (10th Cir. 2005). "[This] list is exclusive: enforcement of an appellate waiver does not result in a miscarriage of justice unless enforcement would result in one of the four situations enumerated above." *United States v. Shockey*, 538 F.3d 1355, 1357 (10th Cir. 2008) (internal quotation marks omitted). The record before us does not establish any of these circumstances.

First, there is no evidence that the district court relied on a constitutionally impermissible factor. Second, even if Thornburgh were to contend, as he did in the district court, that his prior counsel failed to assert a potentially valid challenge to the search warrant, counsel's alleged ineffectiveness does not relate to the negotiation of the waiver. Moreover, "a defendant must generally raise

claims of ineffective assistance of counsel in a collateral proceeding, not on direct review. This rule applies even where a defendant seeks to invalidate an appellate waiver based on ineffective assistance of counsel." *Porter*, 405 F.3d at 1144 (citation omitted). Third, the sentence imposed does not exceed the statutory maximum set by Congress for the offense of conviction, which was no more than ten years of imprisonment and a fine of not more than $250,000.

Finally, the waiver is not otherwise unlawful and does not seriously affect the fairness, integrity, or public reputation of judicial proceedings. In *Shockey*, we considered the defendant's claim that it would be a miscarriage of justice to enforce his appeal waiver because the sentence the district court imposed was so ambiguous as to be unlawful. The defendant based his claim on our decision in *United States v. Dougherty*, 106 F.3d 1514, 1515 (10th Cir. 1997), which included in its definition of an "illegal sentence" a sentence that is "ambiguous with respect to the time and manner in which it is to be served," or that is "internally contradictory." (Internal quotation marks omitted). We concluded in *Shockey* that our precedent foreclosed the defendant's claim, however, because "the fourth *Hahn* exception looks to whether the *waiver* is otherwise unlawful, not to whether another aspect of the proceeding may have involved legal error." *Shockey*, 538 F.3d at 1357 (internal quotation marks omitted). "As inscrutable as Shockey's sentence is, enforcement of his plea agreement's waiver would not render *the waiver itself* unlawful. . . . Nothing in *Dougherty* casts Shockey's

*waiver* as unlawful." *Id.* at 1357-58 (citations and internal quotation marks omitted). *Cf. United States v. Groves*, 369 F.3d 1178, 1182 (10th Cir. 2004) (concluding appeal waiver did not bar defendant's claim that his sentence was unconstitutional "[b]ecause the defendant reserved the right to appeal an 'illegal sentence,' and because an unconstitutional sentence is 'illegal'"). Likewise, nothing in the record suggests that Thornburgh's waiver of his appellate rights was unlawful.

Accordingly, we GRANT the government's Motion to Enforce Plea Agreement and DISMISS the appeal.

ENTERED FOR THE COURT
PER CURIAM