**F I L E D**

**UNITED STATES COURT OF APPEALS**

**July 6, 2005**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

IVAN SEGURA,

     Defendant-Appellant.

No. 04-1342
(D.C. No. 03-CR-157-WM)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **McKAY** and **HENRY**, Circuit Judges.

In this direct criminal appeal, Defendant-Appellant Ivan Segura argues he

is entitled to resentencing in light of United States v. Booker, 125 S. Ct. 738

---

[*]After examining appellant's brief and the appellate record, this panel has
determined unanimously that oral argument would not materially assist the
determination of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R.
34.1(G). The case is therefore ordered submitted without oral argument. This
Order and Judgment is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be
cited under the terms and conditions of 10th Cir. R. 36.3.

(2005). We disagree.[1] Exercising jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we AFFIRM Segura's sentence.

## I. Facts.

The Government charged Segura, a registered nurse, with fifty-two criminal counts stemming from his taking narcotics from the emergency department in which he worked. In exchange for the Government dropping fifty-one counts, Segura agreed to plead guilty to one count of tampering with a consumer product, in violation of 18 U.S.C. § 1365(a)(4). In his plea agreement, Segura admitted that, while working as a registered nurse in the emergency room at Evans Army Community Hospital at Fort Carson, Colorado, Segura accessed a secured automated drug dispensing station, took narcotics for his own use, and replaced the stolen narcotics with either saline solution or other drugs. Segura agreed that the district court would use the federal sentencing guidelines to calculate Segura's sentence.

Applying those guidelines, the district court calculated Segura's base offense level to be 25. See U.S.S.G. § 2N1.1. The court then added two levels

---

[1]     Although the Government conceded that there was Booker error here and agreed that the case should be remanded, we are not bound by the Government's concession. A remand involves more than just the interests of the two parties; it also consumes scarce judicial resources on remand. We are unwilling to incur that loss when the record is clear that defendant waived his Booker objection.

after finding Segura had abused a position of trust or special skill. See id.

§ 3B1.3. Subtracting three levels for Segura's accepting responsibility, see id.

§ 3E1.1, the district court determined Segura's final offense level to be 24. His

criminal category was III, resulting in a guideline range of 63-78 months.

Nevertheless, the district court departed downward from that guideline range after

the court found that Segura's criminal history score overrepresented his actual

criminal history.[2] The district court's using the lower category II criminal history

score resulted in a guideline range of 57-71 months. The court imposed a

sixty-month sentence.

Before the district court sentenced Segura, however, the Supreme Court

decided Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531 (2004),[3] in which

the Court held that Washington's sentencing scheme was unconstitutional. See id.

---

[2] Segura's criminal history included a 1995 misdemeanor harassment conviction involving Segura and his former wife, for which Segura received a twenty-four-month deferred sentence; a 1997 misdemeanor harassment conviction, again involving Segura and his former wife; and a 2002 misdemeanor conviction for driving while impaired, for which he received probation. According to Segura, he served no jail time for any of these prior convictions.

[3] The district court conducted a sentencing hearing on May 27, 2004. At that time, the court incorporated the presentence report and overruled Segura's objection to the two-level enhancement for abusing a position of trust or using a special skill. The court, however, continued the sentencing hearing to enable Segura to have his psychiatric expert clarify her opinion, which was relevant to Segura's motion for a downward departure. The district court reconvened the sentencing proceeding July 16, 2004. The Supreme Court had decided Blakely in the interim, on June 24, 2004.

at 2538. Because Washington's sentencing scheme was similar to the federal sentencing guidelines, Segura filed a motion urging the district court to declare the federal sentencing guidelines unconstitutional. In fact, the Supreme Court later applied Blakely to the federal guidelines in Booker, 125 S. Ct. 738 (2005).

The district court gave Segura the opportunity to withdraw his guilty plea in light of Blakely. Segura, however, declined to do so. The district court then applied the guidelines to impose the sixty-month sentence. Segura appeals.

## II.    Issues.

Segura asserts he is entitled to be resentenced in light of Booker. "[T]here are two distinct types" of Booker error. United States v. Gonzales-Huerta, 403 F.3d 727, 731 (10th Cir. 2005) (en banc).

> First, a court could err by relying upon judge-found facts, other than those of prior convictions, to enhance a defendant's sentence mandatorily. As Booker makes clear, the Sixth Amendment prohibits this practice. . . . Second, a sentencing court could err by applying the Guidelines in a mandatory fashion, as opposed to a discretionary fashion, even though the resulting sentence was calculated solely upon facts that were admitted by the defendant, found by the jury, or based upon the fact of a prior conviction.

Id. at 731-32. Segura asserts both types of Booker error occurred at his sentencing. We disagree.

### A.    Constitutional Booker error.

Segura argues that the district court violated the Sixth Amendment when it applied U.S.S.G. § 3B1.3 to enhance Segura's sentence after finding that, in

- 4 -

tampering with a consumer product, Segura "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." "Whether a defendant occupied a position of trust within the meaning of USSG § 3B1.3 is a factual question." United States v. Edwards, 325 F.3d 1184, 1185 (10th Cir. 2003) (quotation omitted).

There is no Sixth Amendment error here because Segura admitted in his plea agreement all the facts necessary for the district court to apply U.S.S.G. § 3B1.3. Segura acknowledged that was a registered nurse. He admitted that, while working in the emergency department at the Evans Army Community Hospital, he had access to the "secure[] automated inventory control and drug dispensing station." That station held narcotics intended for emergency room patients. Only authorized emergency department personnel such as Segura could remove the narcotics by entering their "confidential identifiers and passwords." Segura admitted that, "[o]n approximately 300 occasions from on or about June 19, 2002 through on or about January 6, 2003," he accessed the secured medicine dispensing station and took syringes containing Demerol or morphine sulfate for his own use. These drugs were kept "ready for injection in pre-filled, disposable, sterile containers called Carpuject syringes." Segura obtained these drugs

by entering codes which represented that he was removing narcotics from the . . . Medstation for patient administration, removing narcotics for his

own use, and then entering codes which falsely represented that he was cancelling the transaction and returning unused drugs to the . . . Medstation. On each of these occasions, [Segura] concealed the removal of narcotics by replacing sterile Carpuject syringes with other syringes which he had taken on previous occasions and refilled by injection with saline solution, or the injectable drugs Nubain . . . or Phenergan . . . . By replacing the Demerol and morphine sulfate with another liquid, SEGURA created the appearance that the Carpuject syringes were unopened and intact, and still contained the amount and concentration of sterile, injectable Demerol and morphine sulfate indicated on the package label, when such was not the case. By puncturing the protective plastic cartridge containing the syringe with a hyperdermic needle, [Segura] also negated the packaging measures employed by the manufacturer to ensure sterility of the Carpuject syringes. By replacing the refilled Carpuject syringes back into the . . . Medstation at the . . . Emergency Room, [Segura] put consumer products with which he had tampered back into the stream of interstate commerce, in that the altered contents of the Carpuject syringes were available for administration to patients who came to [the hospital] for emergency medical treatment. In doing so, [Segura] acted with reckless disregard for the risk that patients who came to the Emergency Department . . . would be placed in danger of bodily injury, including physical pain, and under the circumstances manifesting extreme indifference to such risk.

Based upon the facts Segura admitted, the district court applied U.S.S.G. § 3B1.3 to enhance Segura's offense level. Booker requires only that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be *admitted by the defendant* or proved to a jury beyond a reasonable doubt." Booker, 125 S. Ct. at 756 (emphasis added). There was, then, no Sixth Amendment error in this case. See United States v. Serrano-Dominguez, 406 F.3d 1221, 1223 (10th Cir. 2005); United States v. Porter, 405 F.3d 1136, 1143 (10th Cir. 2005) (in dicta).

**B.    Non-constitutional error.**

Segura also asserts that the district court erred in applying the sentencing guidelines in a mandatory manner.  In his plea agreement, however, Segura agreed that the district court would impose a sentence calculated under the federal sentencing guidelines.  After Blakely, Segura did challenge the guidelines' validity.  In response, the district court gave Segura the opportunity to withdraw from the plea agreement.  Segura, however, declined to do so and, thus, ratified the original plea agreement.  Therefore, although Segura has continued to assert that the district court should not have applied the federal sentencing guidelines, Segura ultimately agreed to be sentenced under those guidelines.  See United States v. Green, 405 F.3d 1180, 1189 (10th Cir. 2005) (noting defendant's agreeing, in pre-Booker plea agreement, that district court would apply sentencing guidelines and could depart from those guidelines under only certain circumstances, "indicated an acceptance of the mandatory Guidelines regime that existed before Booker"); cf. Serrano-Dominguez, 406 F.3d at 1222 (noting that defendant reaffirmed his plea agreement after Blakely, but in signed statement reserved in writing the right to challenge the federal guidelines' constitutionality).  There is, then, also no non-constitutional Booker error in this case.  See United States v. Bradley, 400 F.3d 459, 463 (6th Cir. 2005) (holding, e.g., defendant's pre-Booker plea agreement, in which he agreed that he would be sentenced

pursuant to sentencing guidelines, precluded granting defendant relief post-<u>Booker</u> because trial court treating guidelines as mandatory rather than advisory).

Even if we were to conclude that Segura had not acquiesced to sentencing under the federal guidelines and, thus, the district court had erred in applying the guidelines in a mandatory manner, we would further conclude that the error was harmless, <u>see</u> Fed. R. Crim. P. 52(a), because the district court sentenced Segura in the middle of the applicable guideline range. There is, then, no "reason to think that the district judge would have imposed a less severe sentence in the exercise of his post-<u>Booker</u> discretion." <u>United States v. Riccardi</u>, 405 F.3d 852, 876 (10th Cir. 2005).

## III. Conclusion.

For these reasons, we AFFIRM Segura's sentence.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge