FILED
United States Court of Appeals
Tenth Circuit

December 30, 2008

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff‑Appellee,

v.

KURT JOSEPH DILLON,

Defendant‑Appellant.

No. 08-6236
(D.C. No. 08-CR-21-M-1)
(W.D. Okla.)

---

ORDER AND JUDGMENT[*]

---

Before **TACHA**, **BRISCOE**, and **O'BRIEN**, Circuit Judges.

---

Defendant Kurt Joseph Dillon entered a guilty plea to one count of making

and uttering counterfeit securities, in violation of 18 U.S.C. § 513(a). His plea

agreement states that he "knowingly and voluntarily waives his right to . . .

[a]ppeal or collaterally challenge his guilty plea, sentence and restitution

imposed, and any other aspect of his conviction. . . ." Mot. to Enforce, Attach. 1

---

[*]     This panel has determined unanimously that oral argument would not
materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2);
10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral
argument. This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and
10th Cir. R. 32.1.

(Plea Agreement) at 5. Nonetheless, defendant has filed a notice of appeal. The government has now moved to enforce defendant's appeal waiver under *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004) (en banc) (per curiam). We grant the motion and dismiss the appeal.

Mr. Dillon agreed to waive the manner in which his sentence was determined by the court, though the plea agreement does allow him to appeal "a sentence above the advisory sentencing guideline range determined by the Court to apply . . . ." Plea Agreement at 6. The statutory maximum sentence for Mr. Dillon's crime of conviction is 120 months. The district court determined that the advisory guideline range was 15 to 21 months and imposed a sentence of 15 months, at the low end of the range. The maximum statutory fine was $250,000, and the district court ordered Mr. Dillon to pay restitution of $8,084.98 to victims determined by the court.

Mr. Dillon seeks to appeal the amount of restitution ordered by the district court, arguing that it included amounts payable to six victims based on relevant conduct listed in the presentence report to which he had not pleaded guilty. Under *Hahn*, we will enforce an appeal waiver if (1) "the disputed appeal falls within the scope of the waiver of appellate rights"; (2) "the defendant knowingly and voluntarily waived his appellate rights"; and (3) "enforcing the waiver would [not] result in a miscarriage of justice." 359 F.3d at 1325. Mr. Dillon argues that this claim is outside the scope of his appeal waiver because the waiver did not

include a waiver of his right to appeal the amount of restitution; he did not knowingly waive his right to appeal the amount of restitution; and there will be a miscarriage of justice if the waiver is enforced.

Mr. Dillon's scope-of-the-waiver claim is belied by the plain language of the plea agreement. As noted above, he specifically agreed to waive his right to appeal or collaterally challenge the restitution imposed and he specifically agreed to waive the manner in which the district court determined his sentence. Moreover, Mr. Dillon expressly agreed in the plea agreement that the district court would order a restitution award for victims of Mr. Dillon's related conduct. The plea agreement plainly states that, "the parties further agree that, as part of the sentence resulting from the defendant's plea, the Court will enter an order of restitution *to all victims of the defendant's relevant conduct . . . .*" Plea Agreement at 2. (emphasis added). This provision of the plea agreement formed the basis of the district court's restitution award to victims of Mr. Dillon's relevant conduct. Thus, Mr. Dillon's challenge to the amount of restitution awarded to the relevant-conduct victims clearly falls within the scope of his waiver of the right to appeal his sentence and restitution imposed. *See United States v. Cooper*, 498 F.3d 1156, 1159 (10th Cir. 2007) (holding that challenge to restitution falls within scope of appeal waiver, based on the same language).

"When determining whether a waiver of appellate rights is knowing and voluntary, we especially look to two factors. First, we examine whether the

language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily. Second, we look for an adequate Federal Rule of Criminal Procedure 11 colloquy." *Hahn*, 359 F.3d at 1325 (quotation and citation omitted). As noted above, Mr. Dillon's plea agreement plainly and unambiguously informed him that the district court would order restitution to all victims of his relevant conduct, and that he was waiving his right to appeal both the amount of the restitution and the manner in which it was determined by the district court. Moreover, in his petition to enter a guilty plea, Mr. Dillon told the court that he understood it would consider all relevant conduct at the time of sentencing, even though he was pleading guilty to fewer than all counts in the indictment. Mot. to Enforce, Attach. 2, at 6. Finally, at his plea colloquy, Mr. Dillon told the court that he understood he was waiving his right to appeal his conviction and sentence, so long as it was within the guideline range. *Id.*, Attach. 3, at 9.

We explained in *Hahn* that a defendant need not "know with specificity the result he forfeits before his waiver is valid." 359 F.3d at 1327. "The law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances-even though the defendant may not know the *specific detailed* consequences of invoking it." *Id.* (brackets and quotation omitted). Mr. Dillon, therefore, did not need to know exactly how his sentence or

restitution amount would be determined in order to waive his right to appeal any aspect of his sentence or restitution order. Based on the language of the plea agreement and the plea colloquy, we conclude that Mr. Dillon's appeal waiver, including his right to appeal the restitution order, was knowing and voluntary.

Finally, Mr. Dillon argues enforcing the appeal waiver would be a miscarriage of justice because there is insufficient connection between the counterfeit check count to which he pleaded guilty and the conduct determined by the district court to be relevant conduct. After hearing witness testimony and arguments from both counsel, the district court ruled, over Mr. Dillon's objection, that Mr. Dillon's use of false names, false identification and false information to fraudulently apply for credit and to obtain goods and merchandise from the six businesses listed in the presentence report was sufficiently similar in conduct and in proximity of time to the crime of conviction to be considered relevant conduct for sentencing purposes.

The miscarriage-of-justice exception looks to whether "*the waiver* is otherwise unlawful," *id.* at 1327 (quotation omitted and emphasis added), not whether some other aspect of the proceeding may have involved legal error. Mr. Dillon's argument that his appeal waiver should be excused due to the alleged misapplication of the relevant-conduct sentencing guideline does not support the miscarriage-of-justice exception because his claim only concerns the correctness of his sentence and amount of restitution imposed. Mr. Dillon has not asserted

any claim regarding the relevant issue of whether the appeal waiver itself was unlawful. *See United States v. Porter*, 405 F.3d 1136, 1144 (10th Cir. 2005) ("The relevant question . . . is not whether [defendant's] sentence is unlawful . . . , but whether . . . his appeal waiver itself [is] unenforceable."). His argument entails what *Hahn* noted as "the logical failing[] of focusing on the result of a proceeding, rather than on the right relinquished, in analyzing whether an appeal waiver is [valid]." *Hahn*, 359 F.3d at 1326 n.12. To hold that alleged errors under the sentencing guidelines render an appeal waiver unlawful would nullify the waiver based upon the very sort of claim it was intended to waive. In short, Mr. Dillon has not shown that enforcement of the waiver would seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

Accordingly, we GRANT the government's motion to enforce the appeal waiver and DISMISS the appeal.

ENTERED FOR THE COURT

PER CURIAM