FILED
United States Court of Appeals
Tenth Circuit

July 6, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RYAN B. SCHMIDT,

Defendant - Appellant.

No. 15-3089
(D.C. No. 6:14-CR-10159-EFM-1)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **EBEL**, and **BACHARACH**, Circuit Judges.

This matter is before the court on the government's motion to dismiss

defendant Ryan B. Schmidt's appeal because it falls within the scope of the appeal

waiver contained in his Plea Agreement. We grant the government's motion and

dismiss the appeal.

---

[*]    This panel has determined that oral argument would not materially assist the
determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The
case is therefore ordered submitted without oral argument. This order and judgment
is not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I.

Schmidt pleaded guilty to one count of robbery of a business engaged in interstate commerce, in violation of 18 U.S.C. § 1951(a), and one count of use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c).  Pursuant to Fed. R. Crim. P. 11(c)(1)(c), the Plea Agreement proposed an imprisonment sentence in the range of 168 to 300 months (14 to 25 years), five years' supervised release, and a mandatory special assessment of $100 per count.

The district court sentenced Schmidt to 192 months' imprisonment, followed by five years' supervised release.  The court also ordered him to pay a special assessment and restitution.  Regarding Schmidt's period of supervised release, the court ordered him to comply with its standard conditions of supervision, as well as mandatory and special supervision conditions set forth in the presentence report.  One of the special conditions provides as follows:

> The defendant shall submit his/her person, house, residence, vehicle(s), papers, business or place of employment and any property under the defendant's control to a search, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release.  Failure to submit to a search may be grounds for revocation.  The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

R., Vol. 1 at 62 (Judgment).  We hereafter refer to this condition of supervised release as the "Search Condition."

In his Plea Agreement, Schmidt "knowingly and voluntarily" waived his right to appeal

- 2 -

[A]ny matter in connection with this prosecution, the Defendant's conviction, or the components of the sentence to be imposed herein including the length and conditions of supervised release. The Defendant is aware that 18 U.S.C. § 3742 affords a Defendant the right to appeal the conviction and sentence imposed. By entering into this agreement, **the Defendant knowingly waives any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court**. . . . **In other words, the Defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court**.

Mot. to Enforce, Attach. C ("Plea Agreement") at 4-5 (emphasis added).

## II.

Schmidt indicates that he intends to appeal the district court's imposition of the Search Condition.[1] In light of Schmidt's attempt to appeal a condition of his supervised release, the government filed a motion to enforce the appeal waiver in his Plea Agreement under *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004) (en banc) (per curiam).

In evaluating a motion to enforce a waiver, we consider: "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *Id.* at 1325. In response to the government's motion, Schmidt does not argue that his waiver was not

---

[1] Smith says that he plans "to challenge the statutory authority for imposition of the special condition of supervised release," and "will ask this Court to hold that the warrantless-search condition of supervised release is unlawful in his case." Aplt. Resp. to Mot. to Enforce at 4-5.

- 3 -

knowing and voluntary.  We therefore need not address that issue.  *United States v. Porter*, 405 F.3d 1136, 1143 (10th Cir. 2005).  Rather, Schmidt contends that his appeal falls outside the scope of the appeal waiver, or alternatively, that enforcement of his waiver would result in a miscarriage of justice.  *See Hahn*, 359 F.3d at 1325.

**A.**

Schmidt first argues his appeal of the Search Condition falls outside the scope of his appeal waiver.  We have held that "contract principles govern plea agreements."  *Id.* at 1324-25.  Moreover, we strictly construe an appeal waiver and any ambiguity in the plea agreement against the government and in favor of the defendant's appeal rights.  *Id.* at 1325.

Schmidt does not dispute that he waived his right to appeal "conditions of supervised release."  Plea Agreement at 4.  But he points to the exception in his waiver allowing him to appeal his sentence "to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court."  *Id.* 4-5.  He maintains that the Search Condition falls under this exception because that condition is above the applicable sentencing guideline range.

**1.**

The government responds that the terms "guideline range" and "applicable sentencing guideline range,"[2] have the same meaning in Schmidt's appeal waiver as

---

[2]     Schmidt does not dispute the government's contention that these terms are synonymous.

they do when used in the Guidelines.  The government contends that these terms refer *solely* to the imprisonment range that is calculated based on the Guidelines Sentencing Table, after determination of the defendant's total offense level and criminal history category.  *See* U.S.S.G. Ch. 5, Pt. A (Sentencing Table) (2014).

The government cites several instances in which "applicable guideline range" is used in the Guidelines with reference to the Sentencing Table, and also points to the definition of that term for purposes of a sentence reduction under 18 U.S.C. § 3582(c)(2).  But the government's examples merely confirm that, when the issue relates to a defendant's term of imprisonment, the term "applicable guideline range" refers to the imprisonment range produced by applying the Sentencing Table. Although we agree with the government that the Guidelines use the term "guideline range" primarily in the context of imprisonment sentences, we note that they also refer to a "guideline range" in relation to fines.  *See, e.g.*, U.S.S.G. § 5E1.2(c); § 8A1.2(b)(2)(G); *see also United States v. Smith*, 919 F.2d 123, 125-26 (10th Cir. 1990) (vacating fine that exceeded the guideline range).

**2.**

Schmidt disagrees that the terms "guideline range" and "applicable sentencing guideline range," as used in his appeal waiver, are limited to the imprisonment range determined by the court.  He maintains that he reserved the right to appeal *any* aspect of his sentence, including a condition of supervised release, that is above the guideline range.  Schmidt does not base his construction of the terms "guideline

range" and "applicable sentencing guideline range" on how they are used in the Guidelines. Indeed, while the Guidelines refer to a "range" of terms of supervised release that a court may impose, *see* U.S.S.G. § 5D1.2, Appl. n.6, Schmidt does not point to any reference in the Guidelines to a "guideline range" in relation to *conditions* of supervised release, nor have we found one.

Instead, Schmidt argues that "guideline range" has the same meaning in his appeal waiver as it does in 18 U.S.C. § 3742(a)(3). Section 3742(a)(3) authorizes a defendant to appeal his sentence if it

> **is greater than the sentence specified in the applicable guideline range to the extent that the sentence** includes a greater fine or term of imprisonment, probation, or supervised release that the maximum established in the guideline range, or **includes a more limiting condition of** probation or **supervised release under section 3563(b)(6) or (b)(11) than the maximum established in the guideline range**.

18 U.S.C. § 3742(a)(3) (emphasis added). Schmidt notes that § 3742, which is referenced in his appeal waiver, clearly uses the term "guideline range" in relation to certain conditions of supervised release. Therefore, that same term as used in his waiver also extends to conditions of supervised release, meaning that he can appeal the Search Condition if it is above the guideline range.

We agree that § 3742(a)(3) contemplates the existence of a "guideline range" with respect to certain conditions of supervised release, specifically those imposed under 18 U.S.C. § 3563(b)(6) (relating to refraining from frequenting certain places or associating with certain people), or (b)(11) (relating to community corrections

facilities and programs).  Neither of those subsections, however, is relevant to the Search Condition that Schmidt intends to appeal.

But even if we assume for purposes of the government's motion that Schmidt's construction of the appeal waiver is correct—that it permits him to appeal any condition of supervised release if the district court "depart[ed] upwards from the applicable sentencing guideline range determined by the court," Plea Agreement at 5 —he has not shown that this exception to his waiver applies by demonstrating (1) an applicable sentencing guideline range, (2) determined by the court in his case, and (3) from which the court departed upwards.

Schmidt contends that the district court departs upwards from the applicable sentencing guideline range when it imposes "a more limiting condition of . . . supervised release under section 3563(b)(6) or (b)(11) than the maximum established in the guideline range."  Aplt. Resp. at 11 (quoting 18 U.S.C. § 3742(c)(3)).  Without addressing the statute's reference to particular subsections of § 3563, neither of which pertains to the Search Condition, Schmidt concludes that he therefore reserved the right to appeal any supervised release condition that is stricter than the conditions listed in the Guidelines.  He acknowledges that the Guidelines permit a court to impose the Search Condition in appropriate circumstances.  *See* U.S.S.G. § 5D1.3(b), (d)(7)(C).  But he maintains that the Search Condition is not authorized by the Guidelines in his case.  This is so because, according to Schmidt, the Search Condition involves a "greater deprivation of liberty than is reasonably necessary for

- 7 -

the [enumerated] purposes" and is "[in]consistent with [the] pertinent policy statements issued by the Sentencing Commission." *Id.* § 5D1.3(b)(2).

Schmidt's contentions abandon all pretense of identifying a "guideline *range*" that applies to conditions of supervised release. Rather, he argues (as he would in his merits appeal) that the district court erred in construing the Guidelines to permit the imposition of the Search Condition. But whether a court has appropriately applied a particular guideline does not equate with the entirely separate issue whether it departed upwards from an applicable sentencing guideline *range*.

Ultimately, Schmidt's contentions fail to identify a "sentencing guideline range" applicable to conditions of supervised release, or point to any place in the record where the district court determined such a range and then departed upward from it. We see no such findings in the sentencing transcript. Schmidt has not demonstrated that his appeal of the Search Condition falls outside the scope of his appeal waiver.

**B.**

Schmidt argues alternatively that enforcement of his appeal waiver will result in a miscarriage of justice because the Search Condition exceeds the statutory maximum. *See Hahn*, 359 F.3d at 1327 (holding enforcement of an appeal waiver results in a miscarriage of justice where the sentence exceeds the statutory maximum). The burden rests with the defendant to demonstrate a miscarriage of justice as a basis for an exception to enforcement of his appeal waiver. *See United*

*States v. Johnson*, 756 F.3d 1218, 1221 (10th Cir. 2014). Here, Schmidt's burden is even heavier because he did not argue in the district court that his sentence exceeded the statutory maximum. *See id.* (applying plain error analysis where the defendant failed to raise her gender-bias miscarriage-of-justice issue in district court).[3] Aside from pointing to another appeal in which he claims the same issue will be decided, Schmidt makes no effort to support his assertion. He therefore fails to show plain error. *See id.* at 1222 (listing factors defendant must establish to demonstrate plain error).

## III.

Because Schmidt fails to show that his appeal falls outside the scope of his appeal waiver or demonstrate that enforcement of the waiver will result in a miscarriage of justice, we grant the government's motion to enforce his appeal waiver and dismiss his appeal.

Entered for the Court
Per Curiam

---

[3]     Schmidt did not argue in his sentencing memorandum that the Search Condition exceeded the statutory maximum, nor did he object to the Search Condition after the district rendered its sentencing decision to include that condition.