**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 24, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MAGDIEL SANCHEZ-URIAS,
a/k/a Chinola,

    Defendant - Appellant.

No. 24-1506
(D.C. No. 1:24-CR-00042-RMR-1)
(D. Colo.)

_____

## ORDER AND JUDGMENT[*]
_____

Before **MATHESON**, **PHILLIPS**, and **MORITZ**, Circuit Judges.
_____

Magdiel Sanchez-Urias pleaded guilty to a federal drug charge and the district

court sentenced him to a 121-month prison term.  He has appealed from that sentence

but his plea agreement contains an appeal waiver.  The government now moves to

enforce that waiver under *United States v. Hahn*, 359 F.3d 1315, 1328 (10th Cir.

2004) (en banc).  Sanchez-Urias, through counsel, opposes the government's motion

and urges the court to instead go directly to the merits and dismiss the appeal

because, counsel says, there is no nonfrivolous basis for his client to overturn his

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

conviction or sentence.  For the reasons explained below, we grant the government's motion and dismiss this appeal.

## I.     BACKGROUND & PROCEDURAL HISTORY

### A.     District Court Proceedings

A federal grand jury indicted Sanchez-Urias with one count of conspiracy to distribute 500 or more grams of methamphetamine and one count of illegal reentry. He agreed to plead guilty to a single charge of possessing 50 grams of methamphetamine with intent to distribute.  Sanchez-Urias's written plea agreement included an appeal waiver with narrow exceptions.  The only exception currently at issue would allow Sanchez-Urias to appeal if "the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 29."  R. vol. I at 42.

The district court held a change-of-plea hearing.  At that hearing, the court summarized the exception to the appeal waiver as follows: "[I]f I accept your plea agreement, you can only appeal the sentence . . . if it exceeds the top end of the advisory guideline range that applies for your criminal history as determined by the Court at a total offense level of 29 in your particular case."  R. vol. III at 13. Sanchez-Urias confirmed he understood.

Later during the change-of-plea hearing, the court asked counsel for Sanchez-Urias to explain the parties' respective positions about Sanchez-Urias's likely offense level and criminal history category.  Counsel responded that both sides

2

believed the criminal history category would be IV but they disagreed on the offense level. The government believed the offense level would be 29 (and therefore a range of 121 to 151 months), whereas the defense believed it would be 27 (leading to a range of 78 to 97 months). The district court then emphasized to Sanchez-Urias, in various ways, that counsels' estimates were only estimates and he could end up receiving a sentence either above or below those estimates. Sanchez-Urias confirmed multiple times that he understood.

At sentencing, the district court concluded that Sanchez-Urias's criminal history category was IV, as the parties predicted. The court further concluded, however, that the total offense level was 31. This yielded a recommended guidelines calculation of 151 to 188 months. Even so, the government recommended a 121-month sentence, matching the bottom of the Guidelines range if calculated with a total offense level of 29. The court accepted that recommendation and sentenced Sanchez-Urias to 121 months.

According to his current attorney (who was appointed on appeal), Sanchez-Urias believed the district court's calculation of the total offense level at 31 (*i.e.*, higher than 29) brought his case outside of the appeal waiver. For this reason, his attorney says, he instructed his trial attorney to file a notice of appeal, which she did.

### B.    Appellate Proceedings

Before the government moved to enforce the appeal waiver, Sanchez-Urias's new attorney on appeal filed a brief under *Anders v. California*, 386 U.S. 738 (1967),

and moved to withdraw. In the *Anders* brief, the attorney stated that Sanchez-Urias is "entitled to appeal . . . if the Sentencing Guidelines total offense level exceed[s] 29." Aplt. *Anders* Br. at 9, ECF No. 26-1. Nonetheless, counsel had concluded there was no nonfrivolous argument that the district court erred at sentencing given district courts' broad discretion and the fact that a 121-month sentence was already lower than 151 months (the low end of the Guidelines range if calculated with a total offense level of 31).

Soon after, the government filed its motion to enforce the appeal waiver, *i.e.*, the motion currently at issue. Sanchez-Urias, through counsel, responded that the appeal-waiver exception is confusing, especially for an uneducated man such as Sanchez-Urias. Counsel stated that the confusion was compounded by the district court's explanation of the waiver exception during the change-of-plea hearing, particularly in light of the hearing's later discussion about the parties' competing estimates regarding Sanchez-Urias's offense level. All of this, counsel claimed, led Sanchez-Urias to believe he could appeal if the district court calculated his offense level higher than 29. Counsel suggested these circumstances mean his client did not knowingly and voluntarily enter into the plea agreement. But rather than straightforwardly making that argument, counsel concluded that challenging the voluntariness of the appeal waiver might prompt this court to void the plea agreement altogether (potentially leading to a much harsher sentence), so the best course in these circumstances would be to go straight to the merits and file an *Anders* brief (as

counsel had already done). He therefore encouraged the court to deny the government's motion to enforce and instead proceed on the *Anders* brief.

This court entered an order for further briefing from Sanchez-Urias's counsel. The court noted that counsel had not actually taken a position on the three factors the court must consider when deciding whether to enforce an appeal waiver, namely, "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice," *Hahn*, 359 F.3d at 1325. The court therefore required clarification of counsel's views.

Counsel's supplemental response offers arguments against the first and second *Hahn* considerations. We will address those arguments as they become relevant to our analysis below. Counsel nonetheless urges the court to "dismiss the appeal under *Anders*, not under *Hahn*." Aplt. Resp. to Court's May 13, 2025 Order at 7, ECF No. 42.

## II.   ANALYSIS

### A.   Scope of the Waiver

As noted, our first inquiry when faced with a motion to enforce an appeal waiver is to decide "whether the disputed appeal falls within the scope of the waiver of appellate rights." *Hahn*, 359 F.3d at 1325. According to Sanchez-Urias's counsel, Sanchez-Urias believes the answer is no because the district court calculated his offense level as 31, not 29. Counsel himself vacillates between outright endorsing

5

this understanding of the waiver exception and saying that it is at least a reasonable understanding of the waiver exception in light of the confusion allegedly surrounding it and Sanchez-Urias's lack of education.

We will address the alleged confusion below, in the context of whether Sanchez-Urias knowingly and voluntarily waived his appellate rights. Our current inquiry is simply to ascertain the waiver's scope according to its plain language. *See, e.g.*, *United States v. Porter*, 405 F.3d 1136, 1142 (10th Cir. 2005) (performing a *Hahn* scope-of-the-waiver analysis and focusing on "the plain language of the plea agreement").

Again, Sanchez-Urias may appeal if "*the sentence* exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 29." R. vol. I at 42 (emphasis added). The focus here is unambiguously the length of the sentence. All that matters is whether his ultimate sentence exceeded the Guidelines range specified for a total offense level of 29 and a yet-to-be-calculated criminal history score. The criminal history score turned out to be IV, and therefore, correlated with an offense level of 29, the relevant Guidelines range for appeal-waiver purposes was 121 to 151 months. Sanchez-Urias received 121 months. This appeal falls within the scope of the appeal waiver.

## B.    Knowing and Voluntary

We next ask "whether the defendant knowingly and voluntarily waived his appellate rights." *Hahn*, 359 F.3d at 1325. Counsel for Sanchez-Urias says the

6

appeal-waiver exception is confusing and his client therefore did not know what he was agreeing to. We note this is only argument of counsel—we have found nothing in the record supporting the notion that Sanchez-Urias was indeed confused. In any event, we are not required to consider alleged confusion created by an unreasonable reading of the language. *See United States v. Scott*, 469 F.3d 1335, 1338 (10th Cir. 2006) ("It is well settled that we must interpret the agreement according to the defendant's *reasonable* understanding of its terms." (emphasis added)). As noted immediately above, the waiver exception asks whether "the *sentence* exceeds" the yet-to-be-determined Guidelines range, R. vol. I at 42 (emphasis added), not whether the total offense level exceeds 29.

Counsel also claims that the district court's oral explanation of the waiver exception was confusing. The district court said, "[I]f I accept your plea agreement, you can only appeal the sentence . . . if it [*i.e.*, the sentence] exceeds the top end of the advisory guideline range [*i.e.*, a range of months] that applies for your criminal history as determined by the Court at a total offense level of 29 in your particular case." R. vol. III at 13. This is a fair summary of the waiver exception. And again, nothing in the record establishes that this explanation confused Sanchez-Urias.[1]

---

[1] Counsel says, "All that would have been required [to prevent the alleged confusion] was a[n] explanation that any sentence within the sentencing range of 121–151 months created by a defendant, like Appellant, with a criminal history category of IV would prevent Appellant from appealing." Resp. at 7, ECF No. 35. This ignores the appeal waiver's plain language. The waiver did not say that Sanchez-Urias would fall into criminal history category IV. It explicitly left that open, which is why neither the appeal waiver nor the district court itself could give Sanchez-Urias a fixed sentencing range.

We also disagree that the district court created confusion through its later discussion of the parties' dispute over the total offense level. At that point in the hearing, the district court was no longer discussing the appeal waiver or its exceptions.

Finally, assuming for argument's sake there was confusion about any of these matters, Sanchez-Urias's failure to object on these grounds in the district court means he would need to show plain error to avoid his appeal waiver on this account. *See United States v. Edgar*, 348 F.3d 867, 870–71 (10th Cir. 2003) (analyzing the knowing-and-voluntary requirement and holding that a district court's failure to explain the appellate waiver provision is reviewed for plain error if there was no objection on that account in the district court). Plain error requires, among other things, an error that "affected [the defendant's] substantial rights," meaning "it affected the outcome of the district court proceedings." *Id.* at 872 (internal quotation marks omitted). "In the context of a plea agreement, an error is prejudicial if the defendant [shows] he would not have pleaded guilty if the district court had [properly explained the appeal waiver]." *Id.* Sanchez-Urias makes no such showing. He offers nothing to suggest his choice to plead guilty turned on his alleged belief that he could avoid the appeal waiver if the district court calculated his total offense level at higher than 29.

For all these reasons, we reject Sanchez-Urias's challenge to the knowing-and-voluntary element of the *Hahn* test.

8

### C. Miscarriage of Justice

Finally, we ask "whether enforcing the waiver would result in a miscarriage of justice." *Hahn*, 359 F.3d at 1325. Counsel for Sanchez-Urias affirmatively disclaims this possibility: "Because Appellant has no viable appeal [as explained in counsel's *Anders* brief], a miscarriage of justice would not occur if his appeal were dismissed, even under a finding that the Court was enforcing a plea waiver." Aplt. Resp. to Court's May 13, 2025 Order at 2. Whether the defendant has a viable merits argument is not part of the *Hahn* miscarriage-of-justice analysis.[2] Even so, we need not analyze a *Hahn* factor the defendant does not contest. *See Porter*, 405 F.3d at 1143. We therefore find no miscarriage of justice would occur if we enforce the appeal waiver.

## III. CONCLUSION

We grant Sanchez-Urias's counsel's motion to withdraw. We further grant the government's motion to enforce the appeal waiver, and we dismiss this appeal.

Entered for the Court

Per Curiam

---

[2] In the *Hahn* context, a miscarriage of justice occurs "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful." 359 F.3d at 1327 (bracketed numerals in original; internal quotation marks omitted).