**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**July 14, 2025**

_____

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DARLA BRALLEY,

    Defendant - Appellant.

No. 25-6024
(D.C. No. 5:22-CR-00355-SLP-1)
(W.D. Okla.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **HOLMES**, Chief Judge, **CARSON**, and **FEDERICO**, Circuit Judges.
_____

Darla Bralley pleaded guilty to wire fraud and submitting a false tax return. The district court sentenced her to a 24-month prison sentence and ordered restitution of about $545,000.  She has appealed and intends to argue "[t]he district court imposed a sentence that was substantively unreasonable."  Docketing Statement at 5 (Mar. 17, 2025), ECF No. 6.  Her plea agreement contains an appeal waiver.  The government now moves to enforce that waiver under *United States v. Hahn*, 359 F.3d 1315, 1328 (10th Cir. 2004) (en banc).

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

As it turns out, Ms. Bralley discharged her prison sentence earlier this year, so this appeal is moot as to any argument she may wish to make against the substantive reasonableness of her term of imprisonment. But her response to the government's motion suggests she also wishes to challenge restitution. As to that, we grant the government's motion and dismiss this appeal.

## I.    BACKGROUND & PROCEDURAL HISTORY

Ms. Bralley admitted embezzling from her employer and agreed to plead guilty to the wire-fraud and tax-return charges previously mentioned. Her plea agreement contains the following appeal waiver:

> Defendant waives the right to appeal Defendant's sentence as imposed by the Court, including any restitution, and the manner in which the sentence is determined. If the sentence is above the advisory Guidelines range determined by the court to apply to Defendant's case, this waiver does not include Defendant's right to appeal specifically the substantive reasonableness of Defendant's sentence[.]

R. vol. I at 19–20.

At the change-of-plea hearing in September 2022, the district court discussed the appeal waiver with Ms. Bralley as follows:

> THE COURT: . . . Ma'am, do you understand that under the plea agreement, and we'll talk about it more here in just a minute, you will be waiving or giving up your right to appeal or to collaterally challenge the sentence that's ultimately imposed by the Court except in some very limited circumstances?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Have you discussed that waiver of your appellate rights with your attorney?

2

THE DEFENDANT: Yes.

THE COURT: And do you understand precisely what rights you're waiving in that regard?

THE DEFENDANT: Yes.

THE COURT [addressing defense counsel]: Mr. Box, do you believe that your client fully understands the nature of the charges, the possible punishment, and the constitutional rights she is entitled to and waiving today, including the right to appeal?

MR. BOX: I do, Your Honor.

. . .

THE COURT: . . . [S]o knowing all of those rights that you have and would be waiving or giving up, including your right to appeal or collaterally challenge the sentence, how do you plead to Count 1 of the information?

THE DEFENDANT: Guilty.

THE COURT: And how do you plead to Count 2 of the information?

THE DEFENDANT: Guilty.

*Id.* at 88–90.  The district court later had this exchange with Ms. Bralley:

THE COURT: Is your plea of guilty and the waivers of your rights made voluntarily and completely of your own free choice?

THE DEFENDANT: Yes.

THE COURT: Has anyone in any way attempted to force or pressure you to plead guilty?

THE DEFENDANT: No.

*Id.* at 92.  And after discussion of unrelated matters, the district court returned to the

appeal waiver:

3

> THE COURT: And as we talked about earlier, you understand—you understand you're waiving your right to appeal or collaterally challenge the sentence that the Court imposes except in some very limited circumstances as outlined in the plea agreement?
>
> THE DEFENDANT: Yes.

*Id.* at 96. Finally, after additional discussion of the effect of pleading guilty, the district court concluded, "I find that you are competent to enter this plea of guilty and that your plea is entered voluntarily and with a full understanding of the rights that you're giving up . . . ." *Id.* at 102.

Sentencing took place in October 2023. As noted above, the district court sentenced Ms. Bralley to twenty-four months' imprisonment. This was a downward variance from the Guidelines recommendation of 30–37 months. The district court also ordered more than $500,000 in restitution, comprising repayment to Ms. Bralley's employer and additional tax due to the IRS. The court allowed her to self-surrender to prison in December 2023, which she did. She did not appeal.

In June 2024, the district court received a pro se pleading from Ms. Bralley titled, "Motion for Sentence Reduction Under Advisory of Compassionate Release, the First Step Act, and USSC Promulgated Amendment Modifications, Pursuant to USC 3582(c)(1)(A) and (c)(2) of Title 18." R. vol. I at 44 (capitalization altered). Ms. Bralley argued she deserved resentencing for various reasons, including:

- ineffective assistance of Mr. Box, because, among other things, he had allegedly pressured her into signing a plea agreement that was no more advantageous than what she could have obtained through a public defender (Ms. Bralley had privately retained Mr. Box);

4

- she had pleaded guilty to only one count of filing a false tax return (*i.e.*, for a single tax year) but her restitution judgment included amounts payable to the IRS for all tax years in which she had been embezzling money; and

- a two-year prison sentence was unreasonable in light of her history and characteristics, which allegedly made her well-qualified for a sentence of probation only.

Ms. Bralley also claimed she had instructed her attorney to file an appeal, but he never did.

Over the course of a few orders seeking clarification, the district court concluded Ms. Bralley at least intended her pleading to be a 28 U.S.C. § 2255 motion alleging ineffective assistance based on her attorney's failure to file an appeal. The court appointed a federal public defender to represent Ms. Bralley and scheduled a hearing on February 24, 2025, to address "the discrete factual issue of whether and how Defendant communicated her desire to appeal to [her former attorney] Mr. Box." R. vol. I at 236.

Although neither party has brought the fact to our attention, we take judicial notice that the Bureau of Prisons' Inmate Locator service (www.bop.gov/inmateloc/) lists Ms. Bralley as "[n]ot in BOP Custody as of: 02/14/2025." *Cf. United States v. Muskett*, 970 F.3d 1233, 1237 n.4 (10th Cir. 2020) (taking judicial notice of the BOP Inmate Locator service).

The February 24 hearing took place as scheduled. There was no discussion about Ms. Bralley's release from prison. She testified she tried to contact Mr. Box to

5

ask about an appeal but was unsuccessful. Although beyond the scope of the hearing, Ms. Bralley's new attorney also had this exchange with her client:

> Q. So you're saying Mr. Box never specifically discussed the appellate waiver [with] you [when the two of you reviewed the plea agreement at his office]?
>
> A. Correct.
>
> Q. And you don't recall being advised of waiving your appellate rights in open court either?
>
> A. I don't recall.

R. vol. III at 50.

Ms. Bralley's brother testified that he had called Mr. Box on Ms. Bralley's behalf to ask about an appeal. Finally, Mr. Box himself testified he had received a call from Ms. Bralley's brother conveying Ms. Bralley's desire to appeal, and he (Box) responded that there was no legal basis to appeal. He also testified that he had "specifically discuss[ed] the appellate waiver" with Ms. Bralley when they met at his office, "and she understood [it]." *Id.* at 53.

Following the hearing, the district court issued a written order granting Ms. Bralley's as-construed § 2255 motion. The district court concluded Ms. Bralley had instructed Mr. Box to appeal and he had not. Accordingly, as a remedy, the district court reinstated its October 2023 final judgment. Ms. Bralley then timely filed a notice of appeal, leading to this proceeding and the government's motion to dismiss based on the appeal waiver. Ms. Bralley remains represented by court-appointed counsel.

6

## II.    ANALYSIS

When deciding a motion to enforce an appeal waiver, we normally ask: "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *Hahn*, 359 F.3d at 1325. But we need not address any *Hahn* factor the defendant does not contest. *See United States v. Porter*, 405 F.3d 1136, 1143 (10th Cir. 2005). Ms. Bralley does not challenge the first factor (scope of the waiver), so we will not address it further.

Ms. Bralley begins her argument with the heading, "Ms. Bralley did not knowingly and voluntarily waive her appellate rights," Resp. at 2, which echoes the second *Hahn* inquiry. In the sentence that immediately follows, however, she says, "When a defendant has received ineffective assistance of counsel in connection with the negotiation of her waiver, it would be a miscarriage of justice to enforce the appeal waiver." *Id.* (internal quotation marks omitted). This appears to be an argument under the third *Hahn* inquiry. *Cf. Hahn*, 359 F.3d at 1327 (listing "ineffective assistance of counsel in connection with the negotiation of the waiver" as a potential form of miscarriage of justice under the third *Hahn* factor (internal quotation marks omitted)). She then describes the ineffective-assistance claim she brought against Mr. Box, emphasizing the testimony from the evidentiary hearing where Ms. Bralley claimed Mr. Box never discussed the appeal waiver with her ahead of time and Mr. Box said the opposite. She further emphasizes the language from her

as-construed § 2255 motion suggesting she understood her appeal waiver to contain an exception for an unreasonable sentence. As for the actual exception ("If the sentence is above the advisory Guidelines range determined by the court to apply to Defendant's case, this waiver does not include Defendant's right to appeal specifically the substantive reasonableness of Defendant's sentence," R. vol. I at 19–20), Ms. Bralley says this is "technical language" and "the district court's colloquy here did not go far enough to ensure . . . that Ms. Bralley understood the appellate waiver." Resp. at 4. Thus, she concludes,

> The Court made an inadequate effort at the [change-of-plea] proceeding to ensure she understood the meaning and consequences of her appellate waiver. Ms. Bralley's insistence and desperation to file an appeal, her demand that her right to do so be vindicated through her 2255 motion, and continuing through the hearing that followed shows that Ms. Bralley did not understand that she gave up her right to appeal her sentence, including restitution amounts, except in the event the Court sentenced her to a term above the guideline range determined by the Court. Consequently, Ms. Bralley's representations in her 2255 motion and at the hearing should be enough to overcome the waiver.

*Id.* at 5.

"[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). That is the situation this court faces as to Ms. Bralley's prison sentence. Her argument that she received an unreasonable sentence of imprisonment is now moot. But the above-quoted mention of "restitution amounts" leads us to believe she still intends to challenge that aspect of her sentence in this appeal.

8

Ms. Bralley's argument against enforcement of the appeal waiver is essentially a hybrid of *Hahn*'s second and third inquiries. However, her invocation of the ineffective-assistance scenario under the third *Hahn* inquiry (miscarriage of justice) is misplaced. The inquiry there is "ineffective assistance of counsel in connection with the *negotiation* of the waiver." *Hahn*, 359 F.3d at 1327 (emphasis added; internal quotation marks omitted). Ms. Bralley says nothing about the negotiation of the waiver, but instead emphasizes Mr. Box's alleged failure to explain the waiver to her. This allegation is consistent with her remaining assertions, such as about the district court's allegedly inadequate explanation. It is also consistent with the heading of her argument, which specifically challenges whether she knowingly and voluntarily waived her appellate rights. We therefore view her argument as falling solely under the second *Hahn* inquiry.

"When determining whether a waiver of appellate rights is knowing and voluntary, we especially look to two factors. First, we examine whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily." *Id.* at 1325. Here, the government points us to the section of the plea agreement regarding the appeal waiver, which states that Ms. Bralley "knowingly and voluntarily waives" her appeal rights. R. vol. I at 19. This relates to the appeal waiver specifically, not to the plea agreement generally, but Ms. Bralley does not argue this is inadequate. We also note that, during the change-of-plea hearing, Ms. Bralley answered affirmatively to the district court's question, "Is your plea of

guilty and the waivers of your rights made voluntarily and completely of your own free choice?"  R. vol. I at 92.  We therefore find the first requirement satisfied.

"Second, we look for an adequate Federal Rule of Criminal Procedure 11 colloquy."  *Hahn*, 359 F.3d at 1325.  This is where Ms. Bralley focuses her argument. She notes that the district court asked, "[D]o you understand that under the plea agreement . . . you will be waiving or giving up your right to appeal or to collaterally challenge the sentence that's ultimately imposed by the Court except in some very limited circumstances?"  R. vol. I at 88–89.  Ms. Bralley believes this reference to "limited circumstances," without more, was not enough to make sure she understood the waiver.

This was not the full extent of the waiver discussion, however.  The district court also asked Ms. Bralley if she had discussed the waiver with Mr. Box and if she understood "precisely what rights you're waiving in that regard."  *Id.* at 89. Ms. Bralley answered yes to both questions.  The district court also asked Mr. Box if his client understood the rights she was giving up, including through her appeal waiver, and Mr. Box answered affirmatively.  We conclude this is an adequate Rule 11 colloquy.

Ms. Bralley says that her testimony at the § 2255 hearing should overcome the foregoing because it shows she was confused or insufficiently informed.  This argument assumes Ms. Bralley testified credibly, and Mr. Box incredibly, on the issue of pre-plea advice.  The district court made no credibility finding on this issue because the purpose of the hearing was to determine whether Ms. Bralley directed

10

Mr. Box to appeal, not to inquire about Mr. Box's pre-plea advice or lack thereof. Absent such a finding, Ms. Bralley cannot carry her burden on this issue. *See Hahn*, 359 F.3d at 1329 (stating that the defendant bears the burden to present evidence that she "did not understand the waiver" (internal quotation marks omitted)).

For all these reasons, we find Ms. Bralley knowingly and voluntarily waived her appellate rights.

## III.   CONCLUSION

We dismiss this appeal as moot to the extent Ms. Bralley seeks to challenge her sentence. As to the remainder of the appeal, we grant the government's motion to enforce the appeal waiver and dismiss.

Entered for the Court

Per Curiam